DAINIPPON SCREEN MANUFACTUR-
ING CO., LTD. and DNS Electronics,
LLC, Plaintiffs–Appellants,

v.

CFMT, INC. and CFM Technologies,
Inc., Defendants–Appellees.

No. 97–1569.

United States Court of Appeals,
Federal Circuit.

April 29, 1998.

for plaintiffs-appellants. With him on the brief were Michael A. Conley and Tricia L. Greenberg.

Thomas B. Kenworthy, Morgan, Lewis & Bockius, LLP, Philadelphia, PA, argued, for defendants-appellees.

Before MAYER, Chief Judge, MICHEL and LOURIE, Circuit Judges.

LOURIE, Circuit Judge.

Dainippon Screen Manufacturing Co., Ltd. and DNS Electronics, LLC (collectively "Dainippon") appeal from the final decision of the United States District Court for the Northern District of California dismissing its declaratory judgment action against CFM Technologies, Inc. (CFM) and CFMT, Inc. (CFMT) (collectively "defendants") for lack of personal jurisdiction over CFMT, a necessary and indispensable party. *See Dainippon Screen Mfg., Ltd. v. CFMT, Inc.*, No. C–97–20270–JW (N.D.Cal. Aug. 6, 1997). Because the court erred in concluding that it lacked personal jurisdiction over CFMT and in the alternative erred in concluding that CFMT was an indispensable party under Fed.R.Civ.P. 19(b), we reverse.

## BACKGROUND

CFM, a Pennsylvania corporation, competes with Dainippon in the semiconductor manufacturing equipment market. CFM, like Dainippon, sells its wares throughout the United States and maintains sales representatives in and derives revenues from the state of California.

In 1992, CFM incorporated CFMT under Delaware law as a holding company for its intellectual property. Accordingly, CFM assigned all of its patents to CFMT, and CFMT granted back to CFM exclusive licenses to those patents in return for a ten percent royalty based on CFM's net sales. CFMT is not an operating company and at all relevant times has been a wholly-owned subsidiary of CFM. Under the above arrangement, CFMT acquired title to U.S. Patent 4,911,761 and granted CFM an exclusive license thereunder. The license agreement provides that CFMT alone is authorized to

Roderick M. Thompson, Pillsbury Madison & Sutro LLP, San Francisco, CA, argued,

sublicense the '761 patent and to "take appropriate legal action" with respect to infringement.

As related by Dainippon, Dainippon wished to exhibit its FL–820L wafer cleaning apparatus at the July 1995 SEMICON West trade show in San Francisco, but was concerned about possible infringement of the '761 patent. Dainippon contacted CFM and scheduled a meeting for its representatives on June 19, 1995 with Christopher McConnell, President of CFMT and Chairman of CFM, and Roger Carolin, President of CFM, to discuss the matter, including a possible licensing arrangement. At the meeting, Dainippon presented information relating to its FL–820L apparatus, after which McConnell and Carolin asserted that there was an "infringement problem." Shortly thereafter, Heinrich Parker, outside counsel for both CFM and CFMT, telephoned Roderick Thompson, Dainippon's outside counsel, in San Francisco and left a message which stated in relevant part:

> We believe that we've got good, strong, multiple patents in this field. I have been told that [Dainippon] has known about them for years. We are a well-funded/capitalized company and we intend to protect our rights.... We do not think your client should be proceeding unilaterally to show at this show and if they do of course we're going to have to consider how we will handle that. We will not be afraid to protect our rights.

Thompson's Transcription of Parker's Voice Mail Message, June 23, 1995. Parker thereafter reiterated that his clients would not agree to refrain from suing Dainippon and that Dainippon would exhibit the FL–820L "at its peril." Dainippon did not display the FL–820L at SEMICON West.

McConnell and Carolin again met with Dainippon's representatives at SEMICON West to negotiate a possible sublicense. McConnell and Carolin again stressed their interest in "protecting" their patents and stated that "you will see in the near future that we will take action" to protect those patents. A few days later, Dainippon learned that CFMT and CFM had filed suit against two of its competitors alleging infringement of the '761 patent.

Negotiations between the parties broke down by mid–1996, at which time Dainippon decided to continue with its plans to market the FL–820L and shipped one FL–820L to a customer in California in December 1996. Dainippon also filed a declaratory judgment suit against defendants, although it did not serve the complaint. Upon learning of the suit, McConnell, writing as president of CFMT, expressed a renewed interest in negotiating a license with Dainippon and retained Kenneth Clark to negotiate a possible sublicense under the '761 patent. Clark and Thompson met in California to exchange proposals, but ultimately reached no agreement. Dainippon then withdrew its first complaint and filed the instant complaint in the United States District Court for the Northern District of California seeking, inter alia, a declaration that CFMT's '761 patent was invalid and not infringed by Dainippon. See 28 U.S.C. § 2201(a) (1994).

The defendants moved to dismiss Dainippon's complaint on the grounds that (1) no justiciable controversy existed between the parties and (2) the district court lacked jurisdiction over CFMT, a party that defendants contended was necessary and indispensable under Rule 19 of the Federal Rules of Civil Procedure. The court rejected defendants' first ground, finding that defendants' overall conduct created a reasonable apprehension of suit on behalf of Dainippon and therefore that an actual controversy existed between the parties.

The court, however, agreed with defendants that it lacked personal jurisdiction over CFMT. The court noted that CFMT was merely a holding company with no employees, agents, or offices in California, and that CFMT was neither incorporated in California nor registered to conduct business there. The court rejected Dainippon's argument that CFMT had sufficient "minimum contacts" with California by virtue of its receipt of licensing revenues from the sales activities of CFM, its licensee, in that state. The court similarly did not find compelling CFMT's contacts with California consisting of sending threats of infringement to Dainippon in Cali-

fornia or negotiating a license with Dainippon in that state, and determined that these activities "were indisputably taken by CFM, not by CFMT." Accordingly, the court concluded that it would "violate the due process rights of CFMT to permit the exercise of personal jurisdiction over it in this case."

Because in its view CFMT could not be made a defendant, the court next addressed whether Dainippon's suit could proceed against CFM in the absence of CFMT, an inquiry requiring the application of Fed. R.Civ.P. 19. The court first determined that CFMT, as the holder of the '761 patent and the only party under the CFMT–CFM license authorized to take legal action with respect thereto, was a necessary party to the suit under Fed.R.Civ.P. 19(a). The court then proceeded to determine whether CFMT was an indispensable party under Rule 19(b) by analyzing the four factors enumerated by that rule. Most relevant here, the court opined that it would be highly prejudicial to CFMT to allow the case to proceed in its absence because the gravamen of Dainippon's suit was to invalidate the '761 patent. It also stated that Dainippon would have an adequate remedy if the case were dismissed because it could sue defendants in a forum in which jurisdiction over CFMT would be proper. Accordingly, the court determined that CFMT was an indispensable party and granted defendants' motion to dismiss.

Dainippon appealed the dismissal to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (1994).

## DISCUSSION

▇▇▇ Whether a court has personal jurisdiction over a defendant is a question of law that we review *de novo*. *See Viam Corp. v. Iowa Export–Import Trading Co.*, 84 F.3d 424, 427, 38 USPQ2d 1833, 1834 (Fed.Cir. 1996). Disputed facts underlying this legal determination, however, are reviewed for clear error. *See* 2 James Wm. Moore, Moore's Federal Practice § 12.31[6] (3d ed.1997) [*hereinafter* "Moore's"]. Furthermore, we apply the law of our circuit, rather than that of the regional circuit in which the case arose, when we determine whether the district court properly declined jurisdiction

over an out-of-state patentee. *See Akro Corp. v. Luker*, 45 F.3d 1541, 1543, 33 USPQ2d 1505, 1506–07 (Fed.Cir.1995); *see also Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564, 30 USPQ2d 1001, 1006 (Fed.Cir.1994). Whether a party is indispensable under Rule 19(b) is a matter of regional circuit law, *see Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1461, 15 USPQ2d 1554, 1556 (Fed.Cir.1990), a determination which is reviewed for abuse of discretion in the Ninth Circuit, *see Bakia v. County of Los Angeles*, 687 F.2d 299, 301 (9th Cir.1982).

Dainippon argues that our case law, in particular, *Akro Corp. v. Luker*, 45 F.3d 1541, 33 USPQ2d 1505 (Fed.Cir.1995), and *Genetic Implant Systems, Inc. v. Core–Vent Corp.*, 123 F.3d 1455, 43 USPQ2d 1786 (Fed. Cir.1997), mandates a conclusion that personal jurisdiction exists over CFMT in California. Dainippon opines that this conclusion is even more compelling than in the cited cases because CFMT is CFM's wholly-owned subsidiary. Dainippon also contends that the district court's finding that the litigation threats and licensing negotiations exclusively involved CFM is clearly erroneous because the individuals who were engaged in those activities were agents of both CFM and CFMT. Dainippon supports this contention by noting that only CFMT had the authority under the license agreement to take action with respect to litigation and to negotiate sublicenses, and therefore that defendants cannot now assert that CFMT was not involved in the communications.

Defendants respond that CFMT had no pre-litigation contacts with California and that personal jurisdiction cannot be imputed to CFMT by the actions of CFM, its exclusive licensee. The defendants also contend that Dainippon misreads the license agreement and that nothing thereunder precludes CFM from warning competitors about possible infringement or negotiating sublicenses, subject to CFMT's ultimate approval. Finally, defendants assert that the court erred in concluding that an actual controversy existed between the parties.

### A. Personal Jurisdiction

▇▇▇ Determining whether personal jurisdiction exists over an out-of-state defendant

involves two inquiries: whether a forum state's long-arm statute permits service of process and whether the assertion of personal jurisdiction would violate due process. *See Genetic Implant*, 123 F.3d at 1458, 43 USPQ2d at 1788 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–76, 105 S.Ct. 2174, 2181–84, 85 L.Ed.2d 528 (1985)). However, because California's long-arm statute is coextensive with the limits of due process, *see* Cal.Civ.Proc.Code § 410.10 (West 1997); *Fireman's Fund Ins. Co. v. National Bank of Coops.*, 103 F.3d 888, 893 (9th Cir.1997), the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process. *See Akro*, 45 F.3d at 1544–45, 33 USPQ2d at 1508.

■ Although the determination whether the assertion of personal jurisdiction comports with due process is a question of law that we review *de novo*, this determination is based on subordinate questions of fact that we review for clear error. The district court premised its conclusion that personal jurisdiction did not exist over CFMT on the factual finding that CFM alone made the litigation threats and engaged in the various licensing negotiations. We agree with Dainippon that this finding was clearly erroneous. The agents of the defendants who were involved in these activities, namely, McConnell, Parker, and Clark, were either employed by or held positions at both CFM and CFMT. Despite wearing two "hats," many of the alleged statements of these individuals could only have been made on behalf of CFMT. For example, Parker's transcripted voice mail message stated "[w]e believe that *we've got good, strong, multiple patents* in this

field. . . . We intend to protect *our rights,*" (emphasis added), a statement which can reasonably be attributable only to the patent owner. At no point did any of these individuals seek to clarify with Dainippon that they were acting solely at the behest of CFM. Moreover, the license agreement makes clear that the power to negotiate a sublicense or to instigate litigation rested with CFMT, not CFM.[1] In view of CFMT's exclusive authority, it is inconsistent to attribute the actions of these individuals to CFM alone. We therefore conclude that they are attributable (at a minimum) to CFMT, and consider whether this fact warrants the conclusion that personal jurisdiction was proper over CFMT as a matter of law.

In *Akro*, we applied a three-factor test[2] to determine whether the assertion of jurisdiction over a defendant comports with due process, and concluded that the sending of infringement letters by the defendant-patentee to residents within the forum state *coupled with the licensing* by the defendant of an in-state competitor of the plaintiff warranted the exercise of jurisdiction over the defendant in the plaintiff's declaratory judgment suit. *See Akro*, 45 F.3d at 1548–49, 33 USPQ2d at 1509–11.

In *Genetic Implant*, we addressed a similar set of facts, noting:

We have held that sending infringement letters, without more activity in a forum state, is not sufficient to satisfy the requirements of due process. Other activities are required in order for a patentee to be subject to personal jurisdiction in the

---

1. The license agreement states in relevant part (with emphasis added):

   3. Licensee agrees to exercise reasonable diligence during the term of this License Agreement in order to detect any products or processes of third parties which infringe, or possibly infringe, the Patent Rights. Upon discovery of any such infringement, or possible infringement, Licensee shall promptly notice Licensor thereof providing all particulars, and *Licensor shall thereupon have the exclusive right, but shall not be obligated to take appropriate legal action in connection therewith.*
   . . . .
   27. This license shall not be assignable or transferable in any manner whatsoever by Li-

   censee, *nor shall Licensee have the right to grant any sublicenses or otherwise encumber the title of Licensor* in the Licensed Properties without first having obtained the written consent of the Licensor.

2. The three factors are: whether the defendant purposefully directed its activities at residents of the forum, whether the claim arises out of or relates to the defendant's activities with the forum, and whether assertion of personal jurisdiction is reasonable and fair. *See Akro*, 45 F.3d at 1546–49, 33 USPQ2d at 1509–12; *see also Genetic Implant*, 123 F.3d at 1458, 43 USPQ2d at 1788.

forum. *See* [*Akro,* 45 F.3d] at 1548–49, 33 USPQ2d at 1511. Here, however, Core–Vent did more than send cease-and-desist letters to Genetic in Washington.... [M]ost significant[ly], ... Core–Vent [the patentee] ... ha[s] contracted with Dentsply to sell Core–Vent's patented products in Washington. Dentsply has two sales representatives in Washington and ... has sold in the state a substantial dollar amount of Core–Vent products covered by [Core–Vent's] patent.

*Genetic Implant,* 123 F.3d at 1458, 43 USPQ2d at 1789. Concluding that the district court in Washington could exercise personal jurisdiction over the patentee Core–Vent, we observed that Core–Vent's exclusive, worldwide distributorship agreement with Dentsply was analogous to the patent license in *Akro. See id.,* 123 F.3d 1455, 43 USPQ2d at 1789. We were not persuaded that this result was precluded by the fact that the distributor, Dentsply, was neither Core–Vent's agent nor a resident of the forum: "the fact that Dentsply is not a Washington corporation is not determinative. Dentsply is present in Washington in the sense that it promotes and sells Core–Vent's patented products in the state; thus it is transacting business 'in-state.'" *Id.* at 1459, 123 F.3d 1455, 43 USPQ2d at 1789.

■ These cases mandate the conclusion that CFMT had sufficient contacts with California such that personal jurisdiction over it was proper in that state, and that the district court erred in concluding to the contrary. The facts of this case are at least as compelling as those in *Akro* and *Genetic Implant.* CFMT, through its agents McConnell and Parker, issued threats of infringement to Dainippon in California; it licensed CFM to make, use, and sell products covered by the '761 patent throughout the United States, and CFM maintains sales agents in California to fulfill this purpose, and it has derived substantial licensing revenues from CFM's California-based sales under the patent. Moreover, CFMT's attempts to negotiate a

sublicense with Dainippon in California further strengthen CFMT's contacts with that state. These facts are sufficient under *Akro* and *Genetic Implant* to justify the imposition of personal jurisdiction over CFMT in California.

■ We also agree with Dainippon that the parent-subsidiary relationship between CFM and CFMT leads to the conclusion that the imposition of personal jurisdiction over CFMT is "reasonable and fair," one of the due process factors cited in *Akro. See also Genetic Implant,* 123 F.3d at 1458, 43 USPQ2d at 1788. Stripped to its essentials, CFM contends that a parent company can incorporate a holding company in another state, transfer its patents to the holding company, arrange to have those patents licensed back to itself by virtue of its complete control over the holding company, and threaten its competitors with infringement without fear of being a declaratory judgment defendant, save perhaps in the state of incorporation of the holding company. This argument qualifies for one of our "chutzpah" awards. *See Refac Int'l, Ltd. v. Lotus Dev. Corp.,* 81 F.3d 1576, 1584, 38 USPQ2d 1665, 1671 (Fed.Cir. 1996); *Checkpoint Sys., Inc. v. United States Int'l Trade Comm'n,* 54 F.3d 756, 763 n. 7, 35 USPQ2d 1042, 1048 n. 7 (Fed.Cir.1995) (noting that "chutzpah" describes "the behavior of a person who kills his parents and pleads for the court's mercy on the ground of being an orphan"). While a patent holding subsidiary is a legitimate creature [3] and may provide certain business advantages,[4] it cannot fairly be used to insulate patent owners from defending declaratory judgment actions in those fora where its parent company operates under the patent and engages in activities sufficient to create personal jurisdiction and declaratory judgment jurisdiction. After considering all of the relevant factors, we conclude that the court erred in holding that it lacked personal jurisdiction over defendant CFMT.

3. Agreeing that the parent-subsidiary relationship in this case is legally proper, Dainippon does not seek here to pierce the corporate veil.

4. For example, both parties in this appeal seem to agree that CFM created CFMT as its intellectual property holding company in Delaware to reap the benefits of the corporate tax laws in that state.

B. *Indispensability Under Fed R. Civ. P. 19(b)*

■ Even if personal jurisdiction over CFMT were not proper in California, we agree with Dainippon that CFMT was not an indispensable party under Fed.R.Civ.P. 19(b) and therefore that its declaratory judgment suit could proceed even in CFMT's absence. Rule 19(b) provides:

If a person as described in subdivision (a)(1)-(2) [*i.e.*, a necessary party] hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Thus, even if CFMT is a necessary party under Rule 19(a)[5] because it would be prejudiced by a holding of invalidity of its patent, this prejudice does not automatically make CFMT indispensable. *See* Moore's § 19.05[2][a], at 19–87. Instead, as Rule 19(b) prescribes, all of the factors recited by that rule must be assessed and weighed by a court to "determine whether in equity and good conscience the action should proceed among the parties before it."

As to the first factor, party prejudice, the Ninth Circuit has recognized that prejudice to an absent party is mitigated when the interests of that party are "adequately protected by those who are present." *In re*

*Allustiarte,* 786 F.2d 910, 919 (9th Cir.1986). If so, the "person is not indispensable." *Id.* Here, CFMT's interests are adequately protected by CFM, a party that owns CFMT in its entirety (and therefore, in an indirect manner, the '761 patent itself) and that has manifested its obvious concern over the maintenance of CFMT's patents. CFMT and CFM share the common goal of assuring that the '761 patent not be held invalid or be infringed by Dainippon and have jointly sought legal assistance in furtherance of that goal. Courts have expressed the view that, under these circumstances, an argument that the patentee is indispensable under Rule 19(b) is "wholly unconvincing":

[The licensee] has total control over the patent owner. It has the power, *if it wishes,* to cause the patent owner to bring a separate action for infringement of the patent or to join in the present action. Indeed, because the same attorney who represents [the licensee] in this action would apparently also represent [the patentee] if it intervened, the presence of [the patentee] would not change the course of the action in the slightest degree.

*Micro–Acoustics Corp. v. Bose Corp.,* 493 F.Supp. 356, 361, 207 USPQ 378, 382 (S.D.N.Y.1980); *see also Dow Chem. Co. v. Exxon Corp.,* 139 F.3d 1470, 1478–79 (Fed. Cir.1998). Moreover, to the extent it would be prejudiced if the suit were to proceed in its absence, CFMT may intervene in the suit, and this "opportunity to intervene may be considered in calculating [any] prejudicial effect." *Takeda v. Northwestern Nat'l Life Ins. Co.,* 765 F.2d 815, 820 n. 5 (9th Cir.1985).

As to the other Rule 19(b) factors, we can find nothing in Ninth Circuit law or otherwise to suggest that Dainippon's declaratory judgment suit should not proceed even in CFMT's absence. The second factor, the court's ability to shape relief to avoid prejudice, is of little relevance in the context of a

---

5. Fed R. Civ. P. 19(a) states in relevant part:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to

the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

patent declaratory judgment suit because the relief sought in such a suit does not depend upon the patentee's presence in court.

The third factor, adequacy of the judgment, favors maintenance of the suit in CFMT's absence because a declaration of invalidity or noninfringement would fully serve Dainippon's interest in ensuring that it is free from claims of patent infringement irrespective of CFMT's absence. In this regard, it is relevant that a declaratory judgment suit is not one in which "the plaintiff seeks relief that will require an affirmative act by the absentee," therefore making the case "essentially hollow" if it were to proceed in CFMT's absence. *See* Moore's § 19.05[4].

■ As to the fourth factor, whether the plaintiff will have an adequate remedy if the case is dismissed, the district court correctly noted that this factor favors dismissal if there exists another forum in which all parties could be joined in the suit. *See, e.g., Aguilar v. Los Angeles County,* 751 F.2d 1089, 1094 (9th Cir.1985). Accordingly, defendants argue that Dainippon could apparently maintain suit in a forum where personal jurisdiction over CFMT would be proper, presumably the district of Delaware, CFMT's state of incorporation. However, the fact that an alternative forum exists does not automatically warrant dismissal of the case given Rule 19(b)'s mandate to consider all of the relevant factors and the equities of the situation. *See* Moore's § 19.05[5][d]; Rule 19(b), Advisory Committee Notes to the 1966 Amendment (noting that factors "are not intended to exclude other considerations which may be applicable in particular situations"). As already noted, CFM has been and would continue to adequately protect CFMT's interests if the suit were to proceed, a factor which under Ninth Circuit law strongly compels the conclusion that CFMT is not indispensable. *See Allustiarte,* 786 F.2d at 919. Moreover, it is highly relevant that CFMT is merely CFM's holding company for the patent in suit. No sound reason has been argued to us for dismissing a declaratory judgment action against a parent company operating under the patent on the ground that its wholly-owned patent holding company is an indispensable party. The

holding company is not indispensable. We therefore conclude that the court abused its discretion in finding CFMT to be an indispensable party.

### C. *Case or Controversy*

■ As a final matter, defendants argue that the court erred in concluding that an actual controversy existed between the parties. Whether an actual controversy exists is a question of law that we review *de novo. BP Chems. Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 978, 28 USPQ2d 1124, 1127 (Fed.Cir.1993). However, the district court's underlying factual findings, including whether a defendant has made a sufficient threat of infringement and whether a plaintiff was placed in reasonable apprehension of suit, are reviewed for clear error pursuant to Fed. R.Civ.P. 52(a). *Id.* Because the defendants primarily dispute the fact of the threats underlying Dainippon's declaratory judgment claim, we review this finding for clear error, but we find no such error here. The evidence of record, summarized above, leads to the conclusion that defendants made substantial threats which created in Dainippon a reasonable apprehension that it would be sued for infringement. The court therefore did not err in concluding that an actual controversy existed between the parties and did not abuse its discretion in exercising jurisdiction over that controversy. *See Glaxo, Inc. v. Novopharm, Ltd.,* 110 F.3d 1562, 1570, 42 USPQ2d 1257, 1264 (Fed.Cir.1997).

We have considered the parties' remaining arguments, but find them unpersuasive.

### CONCLUSION

The court erred in concluding that it did not have personal jurisdiction over defendant CFMT. The court also abused its discretion in concluding that CFMT was an indispensable party. Accordingly, the court's dismissal of Dainippon's declaratory judgment complaint cannot be sustained. The decision of the court is therefore

*REVERSED.*