INAMED CORPORATION, Inamed Development Company, and Bioenterics Corporation, Plaintiffs–Appellants,

v.

Lubomyr I. KUZMAK, Defendant–Appellee.

No. 00–1292.

United States Court of Appeals, Federal Circuit.

DECIDED: May 15, 2001.

Christopher E. Chalsen, Milbank, Tweed, Hadley & McCloy LLP, of New York, NY, argued for plaintiffs-appellants. With him on the brief were Tedd W. Van Buskirk, Lawrence T. Kass, and Michael N. Nitabach.

Kevin R. Klein, Larson & Taylor, PLC, of Alexandria, VA, argued for defendant-appellee. With him on the brief was Ross F. Hunt, Jr.

Before CLEVENGER, LINN, and DYK, Circuit Judges.

CLEVENGER, Circuit Judge.

Inamed Corp., Inamed Development Co., and BioEnterics Corp. (collectively, "Inamed" or "appellants") appeal from an order of the United States District Court for the Central District of California dismissing their action for declaratory judgment against defendant Lubomyr I. Kuzmak, M.D., for lack of personal jurisdiction. *Inamed Corp. v. Kuzmak,* No. 99–2160 (C.D.Cal. Feb. 24, 2000) (*"Inamed Corp."*). Because we conclude that the district court erred in determining that it lacked personal jurisdiction over the defendant, we reverse and remand.

I

This appeal stems from a declaratory judgment action related to four patents directed to devices and methods for the surgical treatment of obesity. The defendant-appellee, Dr. Kuzmak, is listed as a co-inventor of U.S. Patent No. 4,592,339 ("the '339 patent"), directed to an adjustable silicone gastric band used to constrict the size of a stomach, and U.S. Patent No. 4,696,288 ("the '288 patent"), directed to a method for performing gastric banding surgery using a calibrating tube and electronic sensor apparatus. Dr. Kuzmak is also listed as sole inventor of U.S. Patent No. 5,074,868 ("the '868 patent"), directed to a reversible gastric band, and U.S. Pat-

ent No. 5,226,429 ("the '429 patent"), directed to a method for performing a gastric banding operation via laparoscopic surgery. At all times relevant to this appeal, Dr. Kuzmak has been a resident of New Jersey. The appellants are all corporations with principal places of business in California.

Between 1989 and 1993, Inamed entered into four license agreements with Dr. Kuzmak involving his four patents. The fourth agreement, dated July 1, 1993 ("the 1993 Agreement"), superseded the three previous agreements between Dr. Kuzmak and Inamed. The 1993 Agreement granted Inamed an exclusive license to practice all four patents in exchange for royalty fees based on Inamed's commercial exploitation of the patents. From 1992 to 1998, Inamed made annual royalty payments to Dr. Kuzmak of more than $1.3 million based on the sale of gastric bands manufactured in California by Inamed. In 1998, Inamed attempted to renegotiate the license agreement. When these negotiations proved unsuccessful, Inamed terminated the contract on December 6, 1998.

Following the contract's termination, Dr. Kuzmak sent a letter to Inamed, dated December 21, 1998, containing the following language concerning three of the four patents:

> For the record, we should note that we do not concede that the '339 patent is invalid and would, in fact, contend that [Inamed] infringes valid claims of the '339 patent.
>
> . . .
>
> Regarding the '429 patent, [Inamed] is clearly a willful infringer of this patent.
>
> . . .
>
> It also appears from what we have seen that [Inamed] induces infringement of the '288 patent and thus that [Inamed] is currently a willful infringer of the '288 patent as well.

On February 26, 1999, Inamed commenced a declaratory judgment action against Dr. Kuzmak in California, seeking a declaration of patent invalidity, unenforceability, and noninfringement. Inamed also alleged patent misuse and breach of contract. On April 5, 1999, Dr. Kuzmak filed a motion to dismiss for lack of personal jurisdiction. The district court subsequently found that Dr. Kuzmak's contacts with California were not sufficient to support the exercise of either general or specific jurisdiction over him, and thus dismissed the action. Instrumental to the district court's determination were the factual findings that Dr. Kuzmak's license agreements with Inamed had already been terminated, and that Dr. Kuzmak conducted all discussions concerning these agreements via telephone and mail from New Jersey. *Inamed Corp.*, slip. op. at 10. Inamed now appeals.

## II

Whether a court has personal jurisdiction over a defendant is a question of law which we review *de novo*. *Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1269, 46 USPQ2d 1616, 1619 (Fed.Cir.1998). Moreover, we apply the law of the Federal Circuit, rather than that of the regional circuit in which the case arose, when we determine whether a district court properly declined jurisdiction, because the jurisdictional question at issue here is "intimately involved with the substance of the patent laws." *Akro Corp. v. Luker*, 45 F.3d 1541, 1543, 33 USPQ2d 1505, 1506 (Fed.Cir.1995).

Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process. *Genetic Implant Sys., Inc. v.*

*Core–Vent Corp.*, 123 F.3d 1455, 1458, 43 USPQ2d 1786, 1788 (Fed.Cir.1997) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). However, because California's long-arm statute is coextensive with the limits of due process, the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process. *Dainippon*, 142 F.3d at 1270, 46 USPQ2d at 1619–20; *see also* Cal.Civ.Proc.Code § 410.10 (Deering 2001); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320, 46 USPQ2d 1511, 1514 (9th Cir.1998).

 In the seminal case on personal jurisdiction, *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court held that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain *minimum contacts* with it such that the maintenance of the suit does not offend 'traditional notions of *fair play and substantial justice.*' " *Id.* at 316, 66 S.Ct. 154 (emphasis added). The first "minimum contacts" prong of the due process inquiry focuses on whether the defendant "has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King*, 471 U.S. at 471–76, 105 S.Ct. 2174. The second prong of "fair play and substantial justice" gives the defendant an opportunity to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 476–77, 105 S.Ct. 2174. In the first prong, the burden of proof is on the plaintiff to establish "minimum contacts." However, in the second prong, the burden of proof is on the defendant to demonstrate the presence of other considerations that render the exercise of jurisdiction unreasonable. *Akro*, 45 F.3d at 1546, 33 USPQ2d at 1509.

██ In *Akro*, we summarized the Supreme Court's jurisprudence by setting forth a three-factor test to determine whether asserting jurisdiction over an out-of-state defendant comports with due process. The three factors are: (1) whether the defendant "purposefully directed" its activities at residents of the forum; (2) whether the claim "arises out of or relates to" the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is "reasonable and fair." *Akro*, 45 F.3d at 1545, 33 USPQ2d at 1508. The first two factors correspond with the "minimum contacts" prong of the *International Shoe* analysis, and the third factor corresponds with the "fair play and substantial justice" prong of the analysis. *Id.*

██ Inamed argues that Dr. Kuzmak's various contacts and activities directed at California residents make him amenable to personal jurisdiction there. We agree.

### A

In determining whether Dr. Kuzmak purposefully directed his activities at residents of California, the first and most important point of contact is the letter dated December 21, 1998, which Dr. Kuzmak sent to Inamed after the termination of their 1993 agreement. Although Dr. Kuzmak, through his counsel, actually sent the infringement letter to Inamed's attorney in New York, because Inamed's attorney was Inamed's agent for the purpose of receiving the correspondence, the fact that he was located in New York is immaterial. *See Akro*, 45 F.3d at 1546, 33 USPQ2d at 1509. Dr. Kuzmak's contact is still considered to be directed at Inamed, a resident of California.

Dr. Kuzmak contends that his letter should be ignored because it could not have created an "objectively reasonable apprehension" that suit will be brought against Inamed. However, the letter

clearly asserts that Inamed willfully infringed at least two of Dr. Kuzmak's patents and alleges infringement of another. The fact that Dr. Kuzmak chose to use the term "willful" in conjunction with "infringement" is significant. It indicates that he was aware—and perhaps intentionally communicating his awareness—of the treble damages and attorney fees to which he may be entitled in a successful infringement action against Inamed. *See* 35 U.S.C. §§ 284, 285 (1994). Hence, Dr. Kuzmak's challenge to the consideration of his infringement letter in our due process inquiry is simply without merit.

■ We have, however, repeatedly held that the sending of an infringement letter, without more, is insufficient to satisfy the requirements of due process when exercising jurisdiction over an out-of-state patentee. *See, e.g., Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc.,* 148 F.3d 1355, 1361, 47 USPQ2d 1192, 1197 (Fed.Cir. 1998) ("As this court has stated before, cease-and-desist letters alone do not suffice to justify personal jurisdiction."); *Genetic Implant,* 123 F.3d at 1458, 43 USPQ2d at 1789 ("We have held that sending infringement letters, without more activity in a forum state, is not sufficient to satisfy the requirements of due process."); *Akro,* 45 F.3d at 1548, 33 USPQ2d at 1511 ("[W]arning letters from and negotiations for a license with an out-of-state patentee cannot, without more, support personal jurisdiction in an action for a declaratory judgment of patent invalidity and noninfringement."); *Dainippon,* 142 F.3d at 1270–71, 46 USPQ2d at 1620 (same as *Genetic Implant* ). In short, beyond the sending of an infringement letter, "[o]ther activities are required in order for a patentee to be subject to personal jurisdiction in the forum." *Genetic Implant,* 123 F.3d at 1458, 43 USPQ2d at 1789.

We thus consider whether there were "other activities" sufficient to meet the "minimum contacts" requirement of *International Shoe.* Dr. Kuzmak successfully negotiated four license agreements with Inamed based on his four patents. The 1993 Agreement, the last of the four agreements, granted Inamed an exclusive license to practice the inventions claimed in the '339, '288, and '868 patents. It also granted Inamed an exclusive license in what would ultimately issue as the '429 patent. Having agreed to pay a royalty fee based on its exploitation of the patents, Inamed made annual royalty payments from 1992 to 1998 to Dr. Kuzmak of more than $1.3 million based on the sale of gastric bands manufactured at Inamed's facilities in California.

Dr. Kuzmak contends that his negotiation efforts and the ensuing license agreements are not sufficient to demonstrate that he purposefully directed his activities at residents of California. The basis for his position is that, except for one "get acquainted" session in 1989, Dr. Kuzmak negotiated all of the agreements via telephone or mail from his home in New Jersey. However, as we pointed out at oral argument, the Supreme Court has explicitly rejected such rationale in its decision in *Quill Corp. v. North Dakota,* 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992). In *Quill,* where the defendant's contacts with the forum were solely through telephone or mail, the Supreme Court stated that it has "abandoned more formalistic tests that focused on a defendant's 'presence' within a State in favor of a more flexible inquiry into whether a defendant's contacts with the forum made it reasonable ... to require it to defend the suit in that State." *Id.* at 307, 112 S.Ct. 1904. It went on to explain:

> "Jurisdiction in these circumstances may not be avoided merely because the defendant did not physically enter the forum State.... [I]t is an inescapable fact of modern commercial life that a sub-

stantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."

*Id.* at 307–08, 112 S.Ct. 1904 (quoting *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174) (emphasis in the original). Based on the clear principles set out in Supreme Court jurisprudence, we conclude that Dr. Kuzmak's negotiation efforts, although accomplished through telephone and mail from New Jersey, can still be considered as activities "purposefully directed" at residents of California. Therefore, the combination of Dr. Kuzmak's infringement letter and his negotiation efforts which culminated in four license agreements with Inamed is sufficient to satisfy the first factor in the three-part *Akro* test.

### B

Having concluded that Dr. Kuzmak purposefully directed his activities at Inamed, a California resident, we must determine whether Inamed's claim arises out of or relates to Dr. Kuzmak's activities directed at the forum. There can be no dispute that the infringement letter satisfies this factor in the *Akro* test. The central purpose of a declaratory action is often to "clear the air of infringement charges." *Red Wing,* 148 F.3d at 1360, 47 USPQ2d at 1195. Hence, Inamed's claim arises directly out of Dr. Kuzmak's act of sending an infringement letter.

Although Dr. Kuzmak does not dispute the relatedness of the infringement letter, he contends that Inamed's claim does not "arise from or relate to" his prior negotiations and license agreements with Inamed, at least partly because the agreements had

been terminated by the time he sent the infringement letter. We disagree. Although the nexus necessary to satisfy the "arise out of or related to" requirement of the due process inquiry has not been clearly delineated by the Supreme Court, we have stated that it is significant that the constitutional catch-phrase is disjunctive in nature, indicating an added flexibility and signaling a relaxation of the applicable standard from a pure "arise out of" standard. *Akro,* 45 F.3d at 1547, 33 USPQ2d at 1509–10. With this principle in mind, we conclude that Inamed's misuse cause of action at least "relates to" if not outright "arises out of" Dr. Kuzmak's prior negotiation efforts leading to the parties' license agreements. In its complaint, Inamed alleged that Dr. Kuzmak misused his patents by purporting to grant Inamed an exclusive license to exploit his patents when he "did not have all of the rights in the '339 patent and/or the '288 patent at the time he signed the [1993] Agreement, and so could not grant such an exclusive license." Plaintiff's Complaint at 9. Central to such a cause of action would necessarily be an inquiry into the factual circumstances surrounding the making of the 1993 Agreement, such as representations made during negotiations as well as the parties' understanding as captured by the actual agreement. Hence, despite the fact that Inamed terminated the 1993 Agreement before it received an infringement letter from Dr. Kuzmak, its asserted misuse cause of action still arises out of or relates to Dr. Kuzmak's prior negotiation efforts which ultimately culminated in the parties' license agreement. The remaining causes of action seeking declaratory judgment of patent noninfringement sufficiently arise out of the same set of operative facts to vest the district court with pendent personal jurisdiction over those causes of action. *See* 4 Wright & Miller, Federal Practice and Procedure § 1069.2

(2000); *see also IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1056–57 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994).

### C

Once the first two factors of the *Akro* test have been satisfied by Inamed, the burden shifts to Dr. Kuzmak to convince us that the exercise of personal jurisdiction over him is not "reasonable and fair." *Akro,* 45 F.3d at 1545–46, 33 USPQ2d at 1508–09 (citing *Burger King,* 471 U.S. at 476–77, 105 S.Ct. 2174).

█ In addressing the "reasonableness" of exercising jurisdiction, the Supreme Court has stated that the inquiry would depend on an evaluation of several factors: (1) the burden on the defendant, (2) the interests of the forum State, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Asahi Metal Indus. Co. v.Super. Ct. of Cal.,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). These considerations guide our own analysis in the third factor of the *Akro* test.

█ Dr. Kuzmak argues that the exercise of jurisdiction over him by a district court in California is unreasonable because he "has been quite ill for some time with back injuries resulting from an accident and he is unable to stand or sit for longer than one-half hour at a time and he is unable to travel distances." This argument, even if true, does not dictate a denial of jurisdiction as a matter of constitutional right. Alternative means are available to Dr. Kuzmak through which he can obtain relief, such as filing for a change in venue or making a motion of forum *non conveniens.* As we reiterated in *Akro:*

Where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional. For example, ... a defendant claiming substantial inconvenience may seek a change of venue.

*Id.,* 45 F.3d at 1546, 33 USPQ2d at 1508–09 (quoting *Burger King,* 471 U.S. at 476–77, 105 S.Ct. 2174). In the absence of any reasons from Dr. Kuzmak as to why the burden presented by his illness could not be effectively resolved through a motion for a change of venue pursuant to 28 U.S.C. § 1404(a) (1994), we cannot conclude that the district court lacked personal jurisdiction over him. As we have stated before, cases where a defendant may defeat otherwise constitutional personal jurisdiction should be "limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Akro,* 45 F.3d at 1549, 33 USPQ2d at 1511 (quoting *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1568, 30 USPQ2d 1001, 1009 (Fed. Cir.1994)) (stating that Ohio had a "manifest interest" in providing plaintiff, a resident of the state, a convenient forum for redressing the restraint of its production of goods by means of a non-infringed, invalid and/or unenforceable patent). Given California's substantial interest in "providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors," *Burger King,* 471 U.S. at 473, 105 S.Ct. 2174, and Inamed's obvious interest in being able to obtain relief in such convenient forum, we conclude that

Dr. Kuzmak's has failed to present "a compelling case" that the exercise of jurisdiction would be unreasonable.

We have considered the parties' other arguments and find that they are either unpersuasive or unnecessary for resolution of this appeal. Hence, because the district court erred in concluding that Dr. Kuzmak's act of sending an infringement letter to Inamed and his efforts in the negotiations leading to their license agreement were not sufficient contacts to satisfy the constitutional requirements of due process, we reverse its dismissal for lack of personal jurisdiction and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.