LAWMAN ARMOR CORPORATION,
Plaintiff,

v.

David A. SIMON, Defendant.

Civil Action No. 03–3859.

United States District Court,
E.D. Pennsylvania.

May 7, 2004.

Corey Field, Roberta Jacobs–Meadway, Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, PA, for Plaintiff.

John E. Carlson, Carlson Gaskey & Olds, Birmingham, MI, Mark D. Simpson, Synnestvedt & Lechner, LLP, Philadelphia, PA, for Defendant.

### ORDER AND MEMORANDUM

DUBOIS, District Judge.

### ORDER

**AND NOW,** this 7th day of May, 2004, upon consideration of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 5, filed on August 21, 2003), Lawman's Opposition to Simon's Motion to Dismiss or Transfer and Motion in the Alternative for Leave to Take Jurisdictional Discovery (Docket No. 6, filed September 8, 2003), Defendant David A. Simon's Brief in Opposition to Lawman's Motion for Leave to Take Jurisdictional Discovery (Docket No. 7, filed September 22, 2003), Defendant's Supplemental Motion to Dismiss for Lack of Jurisdiction and for Improper Venue or Alternatively to Transfer (Docket No. 13, filed December 10, 2003), Plaintiff's Brief in Opposition to David A. Simon's Supplemental Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue or Alternatively to Transfer (Docket No. 11, filed December 11, 2003) and Defendant David A. Simon's Reply Brief in Support of Supplemental Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue or Alternatively to Transfer (Docket No. 12, filed January 7, 2004), **IT IS ORDERED** that Defendant's Motion to Dismiss is **DENIED.**

It is **FURTHER ORDERED** that the defendant's alternative motion to transfer is **GRANTED** and the case is **TRANSFERRED** to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1631 in the interest of justice.

### MEMORANDUM

Plaintiff Lawman Armor Corp. ("Lawman") filed this action under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and under the patent laws of the United States, 35 U.S.C. § 1 *et seq.* Plaintiff seeks a judgment declaring that the patent claims of defendant David A. Simon are invalid, unenforceable, and not infringed by plaintiff.

Defendant filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). In an Order dated November 25, 2003, the Court granted plaintiff leave to take jurisdictional discovery. After the completion of discovery, plaintiff filed a Supplemental Motion to Dismiss. For the reasons that follow, the Court determines that it does not have personal jurisdiction over defendant and, accordingly, transfers this case to the U.S. District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1631.

### I. BACKGROUND

David Simon is an individual residing in Grosse Point Woods, Michigan. Complaint ¶ 3. He is one of two named inventors of U.S. Patent No. 6,575,001 ("the 001 Patent")—a patent for a control pedal disabling device. *Id.* at ¶ 9. According to the Complaint, Lawman is a Pennsylvania corporation with its principal place of business in Berwyn, Pennsylvania. *Id.* at ¶ 2.

On June 10, 2003, Mr. Simon, through counsel, sent Lawman a letter stating that Lawman was infringing the 001 Patent and proposing a license ("cease-and-desist letter"). *Id.* at ¶ 10. On June 27, 2003, Lawman filed this declaratory judgment action.

### II. LEGAL STANDARD

In patent infringement cases, including declaratory judgment actions that

involve patent holders as defendants, the law of the Court of Appeals for the Federal Circuit applies. *Akro Corp. v. Luker,* 45 F.3d 1541, 1543 (Fed.Cir.1995). Under Federal Circuit law, determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: (1) whether a forum state's long-arm statute permits service of process, and (2) whether the assertion of personal jurisdiction would violate due process. *Inamed Corp. v. Kuzmak,* 249 F.3d 1356 (Fed.Cir.2001); *Genetic Implant Sys., Inc. v. Core–Vent Corp.,* 123 F.3d 1455, 1458 (Fed.Cir.1997) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Because Pennsylvania's long-arm statute is coextensive with the limits of due process, the two inquiries collapse into a single inquiry—whether jurisdiction comports with due process.

In *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court held that "due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316, 66 S.Ct. 154. "Random," "fortuitous," or "attenuated" contacts do not count in the minimum contacts calculus. *Id.* at 475, 105 S.Ct. 2174.

■ The Federal Circuit directs district courts to examine three factors when deciding whether the exercise of personal jurisdiction over an out-of-state defendant satisfies due process in a patent case: (1) whether the defendant "purposefully directed" its activities at residents of the forum; (2) whether the claim "arises out of or relates to" the defendant's activities with the forum; and (3) whether the assertion of personal jurisdiction is "reasonable and fair". *Silent Drive, Inc. v. Strong Industries, Inc.,* 326 F.3d 1194, 1202 (Fed. Cir.2003) (citing *Inamed,* 249 F.3d at 1360). The Federal Circuit explained in *Silent Drive* and *Inamed* that "[t]he first two factors correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." 326 F.3d at 1202, 249 F.3d at 1359.

"In the first prong, the burden of proof is on the plaintiff to establish 'minimum contacts.' However, in the second prong, the burden of proof is on the defendant to demonstrate the presence of other considerations that render the exercise of jurisdiction unreasonable." *Inamed,* 249 F.3d at 1360; *Akro,* 45 F.3d at 1546. For the reasons outlined below, the Court concludes that plaintiff has failed to meet its burden.

## III. DISCUSSION

### A. *The Facts do not Support a Finding that Specific Jurisdiction Exists over Defendant*

In its Opposition to defendant's initial motion to dismiss, submitted prior to taking jurisdictional discovery, plaintiff argued that the Court may exercise specific jurisdiction over defendant. Mot. to Dismiss or Transfer and in the Alternative for Leave to Take Jurisdictional Disc. at 4.

■ Specific jurisdiction exists when the cause of action at issue "arises out of or relates to" contacts between plaintiff and defendant. *Red Wing Shoe Co. v. Hockerson Halberstadt, Inc.,* 148 F.3d 1355, 1359 (Fed.Cir.1998); *Burger King,* 471 U.S. at 472–73, 105 S.Ct. 2174. "[E]ven a single act can support [specific] jurisdiction," so long as it creates a "substantial connection" with the forum, as opposed to an "attenuated affiliation." *Burg-*

er *King*, 471 U.S. at 475 n. 18, 105 S.Ct. 2174 (citing *McGee v. Int. Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)).

■ In response to the initial Motion to Dismiss, plaintiff argues that the Court may exercise specific jurisdiction based on the following facts. First, on June 10, 2003, defendant sent plaintiff a cease-and-desist letter in which he offered to license the 001 Patent to plaintiff. Lawman's Opp. to Simon's Mot. to Dismiss or Transfer and Mot. in the Alternative for Leave to Take Jurisdictional Disc. at 7. Second, counsel for both parties subsequently engaged in an effort to resolve the dispute.[1] *Id.* Third, on June 26, 2003, defendant's counsel sent plaintiff an e-mail message stating that defendant hoped they could "work something out." *Id.* Such evidence fails to establish a basis for specific jurisdiction.

The Federal Circuit has ruled that the sending of an infringement letter, *without more*, is insufficient to satisfy the requirements of due process. *Silent Drive*, 326 F.3d at 1202; accord *Hildebrand*, 279 F.3d at 1356 (holding that letters warning of potential infringement to customers of plaintiff were not enough to subject defendant to personal jurisdiction); *Inamed*, 249 F.3d at 1361. Specifically, "other activities" must occur in addition to the sending of an infringement letter to satisfy the "minimum contacts" requirement of *International Shoe*. *Inamed*, 249 F.3d at 1361.

Plaintiff argues that defendant's offer to license the 001 Patent amounts to "other activities." However, as the Federal Circuit ruled in *Red Wing:*

an offer for a license within a cease-and-desist letter does not somehow convert that letter into something more than it was already. An offer to license is more closely akin to an offer for settlement of a disputed claim rather than an arms-length negotiation in anticipation of a long-term continuing business relationship. Treating such hybrid cease-and-desist letters differently would also be contrary to fair play and substantial justice by providing disincentives for the initiation of settlement negotiations.

148 F.3d at 1360–1361 (citations omitted). Therefore, on the current state of the record, the Court concludes that it may not exercise specific jurisdiction over defendant.

### B. *The Facts do not Support Finding that General Jurisdiction Exists over Defendant*

In the Opposition to defendant's Supplemental Motion to Dismiss, submitted after jurisdictional discovery, plaintiff abandoned its argument that the Court may exercise specific jurisdiction over defendant. Instead, plaintiff argues that defendant's contacts with Pennsylvania are sufficient to allow the Court to exercise general jurisdiction over defendant.

■ General jurisdiction exists when a defendant has contacts with a forum that are "continuous and systematic." *Red Wing*, 148 F.3d at 1359; *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Unlike specific jurisdiction, a defendant may be subject to general jurisdiction even when the cause of action has no relation to those contacts. *Red Wing*, 148 F.3d at 1359.

---

1. Neither party provided the Court with any details as to their attempt(s) to resolve the dispute.

### 1. Defendant's Attempts to Negotiate Licenses for the 001 Patent Do Not Amount to Minimum Contacts

■ Plaintiff argues that defendant's negotiations with two Pennsylvania companies, Winner International ("Winner") and Telflex Incorporated ("Telflex"), to license the 001 Patent amount to minimum contacts. In analyzing defendant's contacts with Winner and Telflex, the Court notes that in *Burger King,* the Supreme Court rejected the notion that a contract can automatically establish sufficient minimum contracts. 471 U.S. at 478, 105 S.Ct. 2174. Rather, the Court in *Burger King* counseled district courts to take a "highly realistic" approach to evaluating business relationships that recognizes that a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the *real object* of the business transaction." *Id.* at 478, 105 S.Ct. 2174 (emphasis added). Based on this ruling, the Court concludes that negotiations for a contract do not establish sufficient minimum contacts.

#### a. *Defendant's Contacts with Winner International*

First, plaintiff offers evidence that defendant attempted to license the 001 Patent to Winner, a company located in Sharon, Pennsylvania. Defendant and defendant's counsel exchanged letters, telephone calls, and e-mails with Winner's President, Chet Quinn, and General Counsel, John F. Hornbostel in 1997 and in 2003. Suppl. Opp. at 6–9. The 1997 communications ended with a letter from Winner to defendant stating that they were not interested in the 001 Patent. *Id.* at Exhibit O (letter dated December 8, 1997). The 2003 communications ended when defendant made Winner an offer

that Winner's General Counsel stated "didn't merit a response" because it asked for "drastically" more money than Winner had previously offered. *Id.* at Exhibit W, (Deposition of John Hornbostel) at 37 and 45.

A look at the "real object" of the contacts between defendant and Winner reveals that they, like defendant's contacts with Lawman, are the type of "hybrid" cease-and-desist letters combined with an offer to license that the Federal Circuit discussed in *Red Wing.* 148 F.3d at 1360–1361. In his Reply Brief in Support of his Supplemental Motion to Dismiss, defendant states that he sent letters to Winner offering to license the 001 Patent because Winner had formerly sold products covered by the patent. Defendant David A. Simon's Reply Brief in Support of Supplemental Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue or Alternatively to Transfer at 4. In support of this statement, defendant asserts that plaintiff obtained a preliminary injunction against Winner for these products. *Id.* Defendant's actions can thus be reasonably viewed as an attempt to avoid a future patent dispute with Winner and, viewed as such, are insufficient to establish general jurisdiction.

Even if the contacts between defendant and Winner were not aimed at preventing infringement, the Court concludes that they are the kind of "random" or "attenuated" contacts the Supreme Court spoke of in *Burger King.* 471 U.S. at 475, 105 S.Ct. 2174. Five years passed between defendant's first attempt to license the 001 Patent to Winner and his second attempt to do so. A review of the evidence submitted by plaintiff reveals that the 1997 communications were an offer from defendant and a rejection of that offer from Winner. There is no evidence of any other negotiations between the parties. The 2003 com-

munications reveal that attorneys for Winner made a proposal to license the 001 Patent. This offer was met by a counteroffer that differed so significantly that Winner did not even respond. These contacts do not amount, as plaintiff argues, to "continuous and systematic" contacts with Pennsylvania. *Red Wing,* 148 F.3d at 1359.

### b. Defendant's Contacts with Telflex Incorporated

Second, plaintiff offers evidence that defendant offered to license the 001 Patent to Telflex Incorporated ("Telflex"), a company with officers in Limerick, Pennsylvania. According to plaintiff, defendant's brother, Mark Simon, works for a subsidiary of Telflex in Germany. *Id.* at 5. At a meeting held in Germany in September 2003, Mark Simon allegedly spoke with an executive from Telflex's office in Pennsylvania, Kevin Gordon, on defendant's behalf. *Id.* at 9. Mark Simon then instructed defendant's patent attorney to forward information on the 001 Patent to Kevin Gordon, and he did so. *Id.* Defendant's counsel also sent a copy of the 001 Patent to Telflex's General Counsel, Steven Chance, in Limerick Pennsylvania. *Id.* Ultimately, Steven Chance discussed the possibility of manufacturing defendant's control pedal disabling device with Telflex Automotive, a subsidiary of Telflex, located in Troy, Michigan. *Id.*

A single conversation in Germany and two follow-up e-mails by defendant's patent attorney are the kind of "attenuated" and "fortuitous" contacts the Supreme Court spoke of in *Burger King.* 471 U.S. at 475, 105 S.Ct. 2174. Defendant's initial contact with Telflex was made in Germany, not Pennsylvania, by defendant's brother on his behalf, not by defendant himself. While plaintiff alleges that the two are business partners, the contact was, none-theless, one step removed from defendant in this case. Further, this contact occurred because defendant's brother works for a Telflex subsidiary and a Telflex executive in charge of product development happened to be visiting that German subsidiary. Unlike the situation with Winner, plaintiff offers no evidence that Telflex has even responded to defendant's general offer of a license.

The evidence that defendant's contacts with Winner and Telflex have not borne fruit distinguishes this case from cases in which the Federal Circuit has found general jurisdiction. For example, in *Inamed,* the Federal Circuit ruled the defendant had sufficient minimum contacts with the forum state based on four successfully negotiated license agreements between the defendant and the plaintiff in that case. 249 F.3d at 1361. Similarly, in *Akro,* the Federal Circuit ruled that the defendant had sufficient minimum contacts with forum state based an exclusive license agreement between the defendant and one of the plaintiff's competitors. In this case, defendant's negotiations with both Winner and Teflex have not resulted in a license, or any other kind of commercial relationship, with either entity.

### 2. Defendant's Contacts with Comcorp Technologies Do Not Amount to Minimum Contacts

Plaintiff also offers evidence of contacts defendant had with Comcorp Technologies, Inc. ("Comcorp"), located in Troy, Michigan, in 1996 and 1997. *Id.* at 5–7. Plaintiff argues that defendant held himself out as an employee of Comcorp in order to negotiate a license for the 001 Patent with Winner and that this relationship is significant for jurisdictional purposes because in 1997 Comcorp was acquired by Telflex (located in Limerick, Pennsylvania). *Id.* at 4, 7. According to plaintiff, defendant established a relationship with Comcorp because his brother

was a shareholder in, and the Comptroller of, Comcorp. *Id.* The evidence discloses that in 1996, prior to Telflex's acquisition of Comcorp, defendant attended an automotive trade show wearing a name badge indicating he was affiliated with Comcorp. Later, defendant received a facsimile transmission from Winner concerning the 001 Patent at Comcorp's offices in Michigan. *Id.* After Telflex acquired Comcorp in 1997, defendant sent Winner a letter under a Comcorp cover sheet, not on Comcorp stationary as plaintiff states, and received a facsimile transmission from Winner at Comcorp's offices in Michigan. *Id.* Plaintiff has not provided any evidence that defendant has had any contact with Comcorp since December 1997.

Comcorp is located in Troy, Michigan, and can thus only be considered a contact with Pennsylvania because it was acquired by Telflex Incorporated of Limerick, Pennsylvania after defendant's first contact with Comcorp. Moreover, defendant's contacts with Comcorp that occurred after its acquisition by Telflex are, like defendant's contact with Winner, the kind of "attenuated" and "fortuitous" contacts the Court spoke of in *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174. On the current state of the record, the Court concludes that there is insufficient evidence to warrant the exercise general jurisdiction over defendant.

In sum, the Court concludes that it does not have specific or general jurisdiction over defendant.

### C. *The Court Transfers this Case to the U.S. District Court for the Eastern District of Michigan*

■ Defendant's Supplemental Motion to Dismiss asks the Court, in the alternative, to transfer this case to the U.S. District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a).[2] Section 1404(a) authorizes a district court to transfer a case to any other district where the suit "might have been brought," "[f]or the convenience of the parties and witnesses, in the interest of justice ..." 28 U.S.C. § 1404(a). The Court concludes the case should be transferred to the Eastern District of Michigan, not dismissed, but that the transfer should be ordered under 28 U.S.C. § 1631 not 28 U.S.C. § 1404(a).

The proper statutory authority for a transfer under the circumstances of this case is 28 U.S.C. § 1631, which provides:

Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

As stated above, the Court lacks personal jurisdiction over defendant. The remaining questions to decide are whether the case could have been brought in the Eastern District of Michigan and whether a transfer is in the interest of justice.

2. The Court notes that the only other section applicable to a transfer, 28 U.S.C. § 1406(a), is limited to cases in which a suit is filed in a district without proper venue. That section is inapplicable because plaintiff, the alleged infringer, is located in this district. *See Pennwalt Corp. v. Horton Co.,* 582 F.Supp. 438, 440 (E.D.Pa.1984).

First, as to personal jurisdiction, given the evidence that defendant resides in Grosse Point Woods, Michigan, in the Eastern District of Michigan, the Court concludes that there is jurisdiction over defendant in the U.S. District Court for the Eastern District of Michigan. Second, as to venue, for federal cases such as the instant matter, venue is governed by 28 U.S.C. § 1391(b).

Subsection (b) of the general venue statute, 28 U.S.C. § 1391, provides that:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Based on the evidence that defendant resides in Grosse Point Woods, Michigan, venue is proper in the Eastern District of Michigan under Section 1391(b)(1). Therefore, the Court concludes that the case could have been brought in the Eastern District of Michigan.

As to the interest of justice, "[n]ormally transfer will be in the interest of justice because [ ] dismissal of an action that could be brought elsewhere is 'time-consuming and justice-defeating.'" *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 467, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); *Miller v. Hambrick,* 905 F.2d 259, 262 (9th Cir.1990); *In re Ski Train Fire in Kaprun, Austria on November 11, 2000,* 257 F.Supp.2d 717, 734 (S.D.N.Y.2003). Further, principles of sound judicial administration counsel that this case should be transferred to the Eastern District of Michigan where jurisdiction may be properly exercised and venue is proper. *See e.g., Societe Nouvelle Generale de Promotion v. Kool Stop International, Inc.,* 633 F.Supp. 153, 155 (E.D.Pa.1985) ("If the lack of *in personam* jurisdiction is in doubt, sound judicial administration requires transfer to a district where it clearly could have been brought"). For the foregoing reasons, the Court concludes the case should be transferred to the Eastern District of Michigan pursuant to 28 U.S.C. § 1631.

## IV.  CONCLUSION

The Court concludes it does not have personal jurisdiction over defendant. In the interest of justice, this case is transferred to the U.S. District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1631.