YAHOO! INC., a Delaware corporation, Plaintiff–Appellee,

v.

**LA LIGUE CONTRE LE RACISME ET L'ANTISEMITISME, a French association; L'Union des Etudiants Juifs de France, a French association, Defendants–Appellants.**

No. 01–17424.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 2, 2002.

Filed Aug. 23, 2004.

Richard A. Jones, Coudert Brothers, San Jose, CA, for the defendant-appellant.

Neil S. Jahss, O'Melveny & Myers, Los Angeles, CA, (briefed), and Robert C. Vanderet, Los Angeles, CA, (argued), for the plaintiff-appellee.

Jodie L. Kelley, Jenner & Block, Washington, D.C. (briefed), for amici curiae Chamber of Commerce of the United States, et al.

Before: FERGUSON, BRUNETTI, and TASHIMA, Circuit Judges.

FERGUSON, Circuit Judge:

Appellants La Ligue Contre Le Racisme Et L'Antisemitisme ("LICRA") and L'Union Des Etudiants Juifs De France ("UEJF") appeal the District Court's grant of summary judgment in favor of Appellee Yahoo! Inc. ("Yahoo!"). Appellants contend that the District Court lacked jurisdiction, that the case was not ripe, and that the District Court should have abstained from hearing the case. We hold that there was no personal jurisdiction over Appellants and reverse the District Court.

## BACKGROUND

Yahoo! is an Internet service provider which has its principal place of business in Santa Clara, California. Its American website, www.yahoo.com, targets U.S. users and provides many services, including auction sites, message boards, and chat rooms, for which Yahoo! users supply much of the content. Nazi discussions have occurred in Yahoo!'s chat rooms and Nazi-related paraphernalia have appeared for sale on its auction website.

Section R645-2 of the French Criminal Code bans exhibition of Nazi propaganda for sale and prohibits French citizens from purchasing or possessing such material. Although a Yahoo! subsidiary, Yahoo! France, operates www.yahoo.fr in France and removes all Nazi material from its site to comport with French law, French users

can still access the American Yahoo! website that carries the Nazi-related discussions and auction items.

In April 2000, LICRA and UEJF discovered that they could access www.yahoo.com in France and view Nazi materials. On April 5, 2000, LICRA sent a cease-and-desist letter to Yahoo! in Santa Clara, California, demanding that Yahoo! prohibit the display of the Nazi materials because the practice was illegal in France. On approximately April 10, LICRA filed a complaint against Yahoo! in a French court, alleging violations of the Nazi Symbols Act. On April 20, UEJF filed a second complaint against Yahoo!, alleging further violations of French law because of the Nazi-related postings. Appellants served Yahoo! with the complaint by using the United States Marshals Service pursuant to the service-abroad requirements of the Hague Convention. Yahoo! challenged the French court's jurisdiction, but the court found jurisdiction was proper under Section 46 of France's New Code of Civil Procedure. Both LICRA and UEJF litigated the cases in France.

On May 22, 2000, the French court, at the request of LICRA and UEJF, issued an order requiring Yahoo!—subject to a fine of 100,000 Francs (approximately $13,300) per day—to destroy all Nazi-related messages, images, and text stored on its server, particularly any Nazi relics, objects, insignia, emblems, and flags on its auction site, and to remove any excerpts from *Mein Kampf* and *Protocole des Sages de Sion*, books promoting Nazism. The order also required Yahoo! to remove from its browser directories, which are accessible in France, the headings "negationists" and any equivalent category under the heading "Holocaust." The French court further ordered Yahoo! to take all necessary measures to prohibit access to the Nazi artifacts on its site and to warn that viewing such material violates French law.

On November 20, the French court reaffirmed its May 22 order, giving Yahoo! three months to comply with the first order and reiterating that fines would accrue daily if Yahoo! did not comply with the order. Appellants used the United States Marshals Service to serve the order on Yahoo! in Santa Clara, California. The imposition of penalties is provisional in France and cannot be imposed without further court proceedings. Yahoo! chose not to pursue its appeal in France, and its right to appeal expired on February 7, 2001.

Yahoo! has not fully complied with the French orders. Some items, such as copies of *Mein Kampf*, coins, and stamps, are still available through www.yahoo.com. Yahoo! has, however, modified its hate-speech policy to preclude use of its services to promote groups that are known for taking violent positions against others because of race or similar factors. Yahoo! also removed *Protocole des Sages de Sion* from its site.

On December 21, 2000, Yahoo! filed a complaint in the Northern District of California requesting a declaration that the French court's orders of May 22 and November 20 were not recognizable or enforceable in the United States. LICRA and UEJF filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) claiming that the District Court lacked in personam jurisdiction over them. Yahoo! thereafter filed a motion for summary judgment claiming that the French orders were in violation of the First Amendment and asserting that a summary declaratory judgment was appropriate because fines were accruing for each day that Yahoo! failed to comply with the French orders. Yahoo! contended that the French judgment and fines would only be collectable in the United States since the French court had prohibited collection

from Yahoo!'s French subsidiary and Yahoo! has no other assets in France.

The District Court concluded that it could properly exercise specific jurisdiction over LICRA and UEJF and, accordingly, denied their motion to dismiss. The District Court then granted Yahoo!'s motion for summary judgment, holding that there was an actual controversy causing a real and immediate threat to Yahoo! and that enforcement of the French orders in the United States would violate the First Amendment. The following day, the District Court filed an amended judgment, declaring that both the May 22 and November 20, 2000, French court orders were unenforceable in the United States.

LICRA and UEJF filed timely notice of appeal challenging the District Court's exercise of personal jurisdiction over them, the ripeness of the case, and the Court's failure to abstain.

## DISCUSSION

The French court's determination that Yahoo! was in violation of French law may not be reviewed by any U.S. court. Yahoo!, however, contends that enforcement of the French court's judgment in the United States would violate Yahoo!'s First Amendment rights. This constitutional claim would presumably be reviewable by any U.S. court able to assert jurisdiction over LICRA and UEJF.

Jurisdiction may be obtained, and the First Amendment claim heard, once LICRA and UEJF ask a U.S. district court to enforce the French judgment. As of yet, the organizations have declined to do so. Rather than wait for the French parties to take action, Yahoo! requested the District Court below to issue a declaratory judgment that enforcement of the French order by U.S. officials would be unconstitutional.

■ The District Court held that it did have personal jurisdiction over LICRA and UEJF. We review this exercise of personal jurisdiction de novo. *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1319–20 (9th Cir.1998).

■ As Yahoo! acknowledges, no basis for general jurisdiction exists because LICRA and UEJF do not have the kind of continuous and systematic contacts with the forum state sufficient to support a finding of general personal jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). We hold that LICRA and UEJF are also not subject to personal jurisdiction under the specific jurisdiction doctrine, which permits jurisdiction over a defendant in a lawsuit "arising out of or related to the defendant's contacts with the forum." *Id.* at n. 8.

In *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court held that "due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

■ Exercise of jurisdiction is consistent with these requirements of "minimum contacts" and "fair play and substantial justice" where (1) the non-resident defendant has purposefully directed his activities or consummated some transaction with the forum or a resident thereof, or performed some act by which he purposefully availed himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Bancroft & Masters, Inc. v. Au-*

*gusta Nat'l Inc.,* 223 F.3d 1082, 1086 (9th Cir.2000).

The first requirement, purposeful availment of the benefits of the forum, "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal quotation marks and citations omitted). A defendant must, by his own actions, create a "substantial connection" to the forum state. *Id.*

In the present case, the District Court found that LICRA and UEJF had purposely availed themselves of the benefits of California. The District Court based this holding on three contacts with the forum: (1) the cease-and-desist letter LICRA sent to Yahoo!; (2) the use of the United States Marshals Service to serve process; and (3) LICRA and UEJF's request to the French court that Yahoo! perform certain acts on its server and remove certain Nazi items from its website in California. The District Court held that these contacts constituted "express aiming," in the sense contemplated by the Supreme Court in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), and by this Court in *Bancroft & Masters,* sufficient to confer personal jurisdiction because Yahoo! alleged that LICRA's and UEJF's intent was to compel Yahoo! to censor constitutionally protected content in California. We disagree.

In *Calder,* the Supreme Court elaborated on the "purposeful availment" standard in the tort context. The plaintiff, whose acting career was centered in California, brought a libel suit in California against a reporter and editor of a Florida tabloid. *Id.* at 784, 788, 104 S.Ct. 1482. The defendants asserted that their employer alone was responsible for the circulation of the

article in California and that they should therefore not be subject to jurisdiction in California courts. *Id.* at 789, 104 S.Ct. 1482. They likened themselves to a welder employed in Florida whose defective product causes injury in California and contended that principles holding the manufacturer subject to jurisdiction in distant states should not be applied to a welder who derives no direct benefit from his employer's interstate sales. *Id.*

The Court rejected this analogy, stating that the writer and editor were not charged with "untargeted negligence" but rather "intentional, and allegedly tortious, actions ... expressly aimed" at California. *Id.* at 789, 104 S.Ct. 1482. The defendants knew that the article would have a possibly devastating impact on the plaintiff and that the brunt of any harm would be felt in California. *Id.* at 789–90, 104 S.Ct. 1482. Under those circumstances, the Court said, the defendants "must 'reasonably anticipate being haled into court there' to answer for the truth of the statements made in their article." *Id.* at 790, 104 S.Ct. 1482.

In *Bancroft & Masters,* 223 F.3d at 1087, this Court noted that cases since *Calder* had "struggled somewhat with *Calder's* import, recognizing that the case cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction." We stated that there must be "something more," and concluded that "something more" was what the *Calder* Court described as express aiming at the forum state. *Bancroft & Masters,* 223 F.3d at 1087; *see also Calder,* 465 U.S. at 789, 104 S.Ct. 1482 ("[T]heir intentional, and allegedly tortious, actions were expressly aimed at California."). We then held that the express aiming requirement of *Calder* was "satisfied when the defendant is alleged to have engaged in wrong-

ful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters*, 223 F.3d at 1087.

In *Bancroft & Masters*, the defendant, Augusta National Inc. (ANI), held several federally registered trademarks for "Masters." *Id.* at 1084. The plaintiff, California-domiciled Bancroft & Masters ("B & M"), registered the domain name "masters.com" for use as its business homepage. *Id.* When ANI learned of B & M's use of the domain name, ANI sent a letter to B & M's California offices demanding that B & M cease and desist its use of masters.com. *Id.* at 1085.

More importantly, ANI also sent a letter to Network Solutions, Inc. ("NSI"), the organization charged at the time with regulating domain names. *Id.* at 1085. That letter triggered NSI's dispute-resolution process, which gave B & M three options: (1) voluntarily transfer the domain name to ANI; (2) allow the domain name to be placed "on hold" such that neither party could use it; or (3) obtain a declaratory judgment establishing B & M's right to use the domain name. *Id.* B & M chose the third option and filed suit in California; ANI challenged jurisdiction. *Id.*

B & M contended that ANI's letters constituted purposeful availment under *Calder*, since ANI triggered NSI's dispute-resolution process in part to wrongfully effect the conversion of B & M's masters.com domain name. *Id.* at 1087. Although ANI responded that its letters were purely defensive, aimed only at protecting its mark, we adopted B & M's interpretation because prima facie jurisdictional analysis requires us to accept the plaintiff's allegations as true. *Id.*

Interpreting *Calder*, we determined that the express aiming "requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters*, 223 F.3d at 1087. We concluded that ANI's letters wrongfully initiated the NSI process and that this act was targeted at B & M; thus, it was not presumptively unreasonable to hale ANI into a California court to answer for its allegedly wrongful actions. *Id.* at 1089.[1]

Consequently, for LICRA's and UEJF's litigation efforts against Yahoo! to amount to "express aiming," those efforts must qualify as wrongful conduct targeted at Yahoo!.[2] We hold that they do not.

---

**1.** Two of the three members of the *Bancroft & Masters* panel concurred separately to specify that their decision rested solely on the assumption that the defendant had engaged in tortious conduct, saying, "Jurisdiction in California would be ripe for challenge if following the development of trial it should appear that ANI acted reasonably and in good faith to protect its trademark against an infringer." 223 F.3d at 1089 (Sneed, J., concurring).

**2.** Our dissenting colleague contends that, so long as the Appellants intended to accomplish a particular result in California, it does not matter whether their acts may be considered wrongful or not. This position is not supported by our case law. In addition to our explicit holding in *Bancroft & Masters*, 223 F.3d at 1087, that the express aiming requirement "is satisfied when the defendant is

alleged to have engaged in wrongful conduct targeted at a plaintiff ...," our cases finding purposeful availment based on *Calder* have uniformly involved an allegation of a wrongful act. *See, e.g., Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1112 (9th Cir.2002) (fraudulent communications intended to induce California managers into detrimental contract arrangement); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) (trademark infringement); *Metro. Life Ins. Co. v. Neaves*, 912 F.2d 1062 (9th Cir. 1990) (attempt to defraud a California resident); *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257 (9th Cir.1989) (defamatory statement); *see also Calder*, 465 U.S. at 785, 104 S.Ct. 1482 (libel, intentional infliction of emotional distress, and invasion of privacy).

■ France is within its rights as a sovereign nation to enact hate speech laws against the distribution of Nazi propaganda in response to its terrible experience with Nazi forces during World War II. Similarly, LICRA and UEJF are within their rights to bring suit in France against Yahoo! for violation of French speech law.[3] The only adverse consequence experienced by Yahoo! as a result of the acts with which we are concerned is that Yahoo! must wait for LICRA and UEJF to come to the United States to enforce the French judgment before it is able to raise its First Amendment claim. However, it was not wrongful for the French organizations to place Yahoo! in this position.

In *Bancroft & Masters*, 223 F.3d at 1087, because the plaintiff had so alleged, we were required to assume that ANI had initiated the NSI process to effect the wrongful conversion of the masters.com domain name and not merely to protect its own rights. According to this assumption, it was wrongful for ANI to place B & M in the position of having to choose between the three options available to it under the NSI procedures (voluntarily transferring the domain name to ANI, allowing the domain name to be placed "on hold" such that neither party could use it, or obtaining a declaratory judgment establishing B & M's right to use the domain name).

■ Here, however, the French court has already upheld LICRA and UEJF's position with respect to French law. We know that LICRA and UEJF were acting to uphold their legitimate rights under French law. This places the parties in this case in a very different posture than the parties in *Bancroft & Masters*. As a result, we cannot say here that the parties did anything wrongful, sufficient for a finding of "express aiming," in bringing this suit against Yahoo!.

Yahoo! obtains commercial advantage from the fact that users located in France are able to access its website; in fact, the company displays advertising banners in French to those users whom it identifies as French. Yahoo! cannot expect both to benefit from the fact that its content may be viewed around the world and to be shielded from the resulting costs—one of which is that, if Yahoo! violates the speech laws of another nation, it must wait for the foreign litigants to come to the United States to enforce the judgment before its First Amendment claim may be heard by a U.S. court.

LICRA and UEJF took action to enforce their legal rights under French law. Yahoo! makes no allegation that could lead a court to conclude that there was anything wrongful in the organizations' conduct. As a result, the District Court did not properly exercise personal jurisdiction over LICRA and UEJF. Because the District Court had no personal jurisdiction over the French parties, we do not review whether Yahoo!'s action for declaratory relief was ripe for adjudication or whether

---

**3.** The dissent asserts that certain acts undertaken in bringing this suit, namely sending a cease-and-desist letter and using the U.S. Marshals Service to serve process on Yahoo!, should have lead LICRA and UEJF reasonably to anticipate being haled into court in California. We fail to see why this is so. Both acts demonstrate that the French parties were aware that Yahoo! was based in California when they took legal action against it, but deliberately initiating legal action against a California party in a foreign court is no reason to anticipate being compelled to appear in California. If that were true, any foreign litigant taking action against parties located in California would be subject to jurisdiction there, even if the act giving rise to the litigation took place in a foreign jurisdiction and even if the foreign party had no other connection to California. No foreign party would ever be able to initiate legal action unless they had the resources to appear in the opposing party's home jurisdiction.

the District Court properly refused to abstain from hearing this case.

REVERSED.

BRUNETTI, Circuit Judge, dissenting:

Appellants La Ligue Contre Le Racisme Et L'Antisemitisme ("LICRA") and L'Union Des Etudiants Juifs De France ("UEJF") appeal the district court's grant of summary judgment related to a French judgment against Appellee Yahoo! Inc. ("Yahoo!"). Appellants claim that the district court lacked jurisdiction over them, that the case was not ripe, and that the district court should have abstained from hearing the case.

The majority holds that, "for LICRA's and UEJF's litigation efforts against Yahoo! to amount to 'express aiming,' those efforts must qualify as wrongful conduct targeted at Yahoo!." The majority, in turn, finds no wrongful conduct on LICRA's and UEJF's part based on the fact that LICRA and UEJF have not come to the United States to enforce the French court judgment.

I dissent from such position for two reasons. First, as detailed below, the case law in our circuit makes clear that, although wrongful conduct will satisfy the Supreme Court's constitutional standard for the exercise of in personam jurisdiction, it is not necessarily required in all cases; indeed, I believe that the Supreme Court's "express aiming" test may be met by a defendant's intentional targeting of his actions at the plaintiff in the forum state. Second, I dissent because the record provides ample indication that LICRA and UEJF targeted Yahoo! in California by successfully moving the French court to issue an order requiring Yahoo!'s American website to comply with French law, serving Yahoo! with such order in the United States, and thereby subjecting Yahoo! to significant and daily accruing fines if Yahoo! refuses to so comply; it is immaterial to the analysis that LICRA and UEJF have yet to enforce the monetary implications of Yahoo!'s refusal to acquiesce in the French court order. Therefore, because I believe that LICRA and UEJF directed their actions toward Yahoo! in California sufficiently to confer in personam jurisdiction, I respectfully dissent.

## BACKGROUND

Although I generally agree with the majority's recitation of the background of this case, I will emphasize and elaborate on certain facts throughout the opinion to highlight where our analyses diverge.

## DISCUSSION

Appellants raise three issues on appeal. First, they assert that the case lacked ripeness for declaratory relief from the district court. Second, they argue that the district court improperly exercised personal jurisdiction over them. Finally, they claim that the district court erred when it refused to abstain from hearing the case.

### A.

A court may, in an "actual controversy," declare the rights and obligations of the parties. 28 U.S.C. § 2201 (2003). The Declaratory Judgment Act's "actual controversy" requirement is analyzed just as in constitutional cases involving questions of "actual controversy." *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–40, 57 S.Ct. 461, 81 L.Ed. 617 (1937). The controversy must be definite and concrete, not merely hypothetical or abstract. *Id.* at 240, 57 S.Ct. 461. The dispute must be subject to specific, conclusive relief, not advisory in nature. *Id.* at 241, 57 S.Ct. 461.

LICRA and UEJF have followed their lawsuit to completion in the French court.

Judgment has been rendered against Yahoo! and fines continue to accrue daily. LICRA and UEJF have simply refrained from enforcing the judgment against Yahoo!. A declaration regarding enforcement of a judgment that has already been ordered by a court, even though not yet sought by the adversarial party, is distinguishable from a declaration sought when a lawsuit has never been instigated. *See id.* at 240, 57 S.Ct. 461 (The controversy "must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."); *cf. San Diego County Gun Rights Comm. v. Reno,* 98 F.3d 1121, 1126 (9th Cir.1996) (holding that to have standing to challenge a statute the plaintiff must show a genuine threat of imminent prosecution under the statute); *Int'l. Society for Krishna Consciousness v. City of Los Angeles,* 611 F.Supp. 315 (C.D.Cal.1984) (case not sufficiently concrete for adjudication because group exercising speech rights at airport had not been harassed by airport officials). As the district court noted, LICRA and UEJF have not requested withdrawal of the French order so that the penalties accruing against Yahoo! would cease. Yahoo! could feasibly be responsible for all retroactive penalties that accrue until Yahoo! is in compliance with the French order. The threat to Yahoo! is concrete and growing daily. Therefore, I believe that the case is sufficiently ripe to be heard in American courts.

## B.

The district court and Yahoo! acknowledge that no basis for general jurisdiction exists. Even if a nonresident party's contacts with the forum state are insufficient for general personal jurisdiction, however, the party may be amenable to jurisdiction under the specific jurisdiction doctrine if the claim is related to the party's activities in or contacts with the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

In the seminal case on personal jurisdiction, *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court held that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain *minimum contacts* with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Id.* at 316, 66 S.Ct. 154 (emphasis added). The "minimum contacts" prong of the due process inquiry focuses on whether the defendant "has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The "fair play and substantial justice" prong gives the defendant an opportunity to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 477, 105 S.Ct. 2174.

This Circuit has summarized the Supreme Court's jurisprudence by setting forth a three-factor test to determine whether asserting jurisdiction over an out-of-state defendant comports with due process. Jurisdiction may be exercised when the following requirements are met:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir.2000). The first two factors correspond with the "minimum contacts" prong of the *International Shoe* analysis, and the third factor corresponds with the "fair play and substantial justice" prong of the analysis.

### 1.

The "purposeful availment" requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174 (internal quotations and citations omitted). Indeed, to satisfy the first factor, there must be "some act" by which defendants "purposefully avail [ ]" themselves of the "privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* The contacts made by a defendant therefore must, by his own actions, create a "substantial connection" to the forum state. *Id.*

> [W]here the defendant "deliberately" has engaged in significant activities within a State ... or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Id.* at 475–76, 105 S.Ct. 2174 (internal citations and quotations omitted); *see also Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir.1990) (citing *Sinatra v. National En-* *quirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988) (" 'Purposeful availment' requires that the defendant 'have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.' ")).

In *Burger King*, the defendants contracted with Burger King's Florida headquarters to open a franchise restaurant in Michigan. *Burger King*, 471 U.S. at 467, 105 S.Ct. 2174. Throughout the preliminary negotiations, the defendants often communicated with Burger King's regional Michigan office; however, because the defendants eventually realized that the regional office lacked authority to alter the terms of the franchise agreement, the defendants ultimately resorted to communicating directly with the Florida headquarters. *Id.* at 467 & n. 7, 105 S.Ct. 2174. After the contract was signed, one of the defendants traveled to Florida briefly to attend a training session for franchisees. *Id.* at 479, 105 S.Ct. 2174.

The *Burger King* Court emphasized that jurisdictional analysis must be based on a "realistic approach" rather than on " 'mechanical' tests." *Id.* The Court noted that while an individual's contract with an out-of-state party *alone* would not automatically establish sufficient contacts to justify the exercise of jurisdiction, a more realistic approach would recognize that a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Id.* (internal quotations and citation omitted). The Court concluded that the defendants knowingly entered into a long-term relationship that "envisioned continuing and wide-reaching contacts with Burger King in Florida." *Id.* at 480, 105 S.Ct. 2174. Because the Court found that "[t]he quality and nature of [this] relationship to the company in Flori-

da can in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated,' " it held that the defendants had sufficiently availed themselves of the Florida forum to support specific jurisdiction. *Id.*

The Supreme Court elaborated on the "purposeful availment" standard in the tort context in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In *Calder,* a California-resident professional entertainer brought a libel suit in California against a reporter and editor of a Florida-domiciled tabloid. *Id.* at 785, 104 S.Ct. 1482. The offending story impugned the plaintiff's professionalism whose acting career was centered in California. *Id.* at 789, 104 S.Ct. 1482. The tabloid sold numerous copies of its publication in California. *Id.* at 785, 104 S.Ct. 1482. The Florida-resident reporter, however, conducted most of the research for the article in Florida, relying on phone calls to sources in California for the information contained in the article. *Id.* And although the Florida-resident editor "[oversaw] just about every function of the [tabloid]," he had been to California only twice, once on pleasure and again to testify in an unrelated trial. *Id.* at 786, 104 S.Ct. 1482.

The defendants asserted that they were not responsible for the circulation of the article in California, but rather that their Florida-domiciled employer circulated the article, and therefore they should not be haled into California's courts. *Id.* at 789, 104 S.Ct. 1482. They likened themselves to a welder employed in Florida whose defectively made product causes injury in California; the cases holding the manufacturer subject to jurisdiction in distant states should not be applied to the welder who derives no direct benefit from his employer's sales in such states. *Id.* at 789–90, 104 S.Ct. 1482. The Court rejected this analogy, stating that the writer and editor were not charged with "untargeted negligence," but rather "intentional, and

allegedly tortious, actions," which were "expressly aimed" at California. *Id.* at 790, 104 S.Ct. 1482. The defendants knew that the article would have a potentially devastating impact on the plaintiff and that the brunt of that harm would be felt in California. *Id.* Under these circumstances, the Court said, the defendants "must 'reasonably anticipate being haled into court there' to answer for the truth of the statements made in their article." *Id.* Accordingly, the Court held that a foreign act that is both "aimed at" and "has effect in" the forum state satisfies the constitutional requirements for jurisdiction. *Id.*

According to our Circuit's jurisprudence, a defendant can meet the *Calder* "effects" test, by (1) committing an intentional act, which was (2) expressly aimed at the forum state, and (3) causing harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state. *See Bancroft & Masters,* 223 F.3d at 1087. In *Bancroft & Masters,* the defendant, Georgia-domiciled Augusta National Inc. (ANI), which operated a golf club in Georgia and sponsored the annual "Masters Tournament," held several federally registered trademarks for the mark "masters." *Id.* at 1084. The plaintiff, California domiciled Bancroft & Masters ("B & M"), registered the domain name "masters.com" for use as its business homepage. *Id.* When ANI learned of B & M's use of the domain name, ANI sent a letter to Network Solutions, Inc. (NSI)—the Virginia-based organization charged with regulating domain-names—challenging B & M's use of masters.com. *Id.* at 1085. ANI also sent a letter to B & M's California offices demanding that B & M cease and desist its use of masters.com and immediately transfer the domain name to ANI. *Id.* ANI's letter triggered NSI's dispute-resolution process, which gave B & M three options: (1) voluntarily transfer the domain name to ANI; (2) allow the domain

name to be placed "on hold," which meant that neither party could use it; or (3) obtain a declaratory judgment establishing B & M's right to use the domain name. *Id.* B & M chose the third option and filed suit in California seeking, *inter alia*, a declaration of non-dilution and non-infringement. *Id.*

ANI challenged jurisdiction in California; it asserted that its minimal contacts with California were insufficient to justify general or specific jurisdiction. *Id.* The court agreed that ANI's contacts did not permit the exercise of general jurisdiction. *Id.* The court emphasized that ANI was not registered or licensed to do business in California, paid no taxes in California, maintained no bank accounts in California, and "targeted" no print, television, or radio advertising toward California. *Id.* at 1086. Moreover, the defendant's website was "passive," i.e., consumers could not use it to make purchases, and they made only occasional, unsolicited sales of tickets and merchandise to California residents. *Id.* The court concluded therefore that because ANI's contacts constituted doing business *with* California, but not doing business *in* California, they could not be subject to the restrictive reach of general jurisdiction. *Id.* (citing *Helicopteros,* 466 U.S. at 418, 104 S.Ct. 1868).

Thus, having found insufficient contacts to support general jurisdiction, the court was left to analyze the applicability of specific jurisdiction. Because ANI had few other contacts with California, and B & M's claim stemmed directly from ANI's letter, the court necessarily assessed whether ANI's letter to B & M was sufficient to establish its "purposeful availment" of California. B & M argued that ANI's letter constituted purposeful availment under the *Calder* "effects test," as ANI deliberately triggered NSI's process not only to defend its trademark but to wrongfully effect the conversion of B &

M's masters.com domain name. *Id.* at 1087. ANI retorted that its letter was purely defensive, aimed only to protect its mark. *Id.* Because the prima facie jurisdictional analysis requires a court to accept the plaintiff's allegations as true, the court adopted B & M's interpretation. *Id.*

This court noted that myriad cases since *Calder* have "struggled with *Calder's* import, recognizing that the case cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction." *Id.* We emphasized that this Circuit has required that there be "something more," and concluded that "something more" is what the *Calder* Court described as "express aiming" at the forum state. *Id.; see also Calder,* 465 U.S. at 789, 104 S.Ct. 1482. Applying *Calder,* we determined that "the requirement [express aiming] is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters,* 223 F.3d at 1087. The court concluded that ANI's letter targeted B & M and wrongfully instigated the NSI process; thus, it was not presumptively unreasonable to hale ANI into the California courts to answer for its actions. *Id.* at 1089.

Two members of the *Bancroft & Masters* panel concurred separately specifically to emphasize that their decision to exercise specific jurisdiction rested solely on the assumption that the defendant had engaged in tortious conduct; indeed, they said, "Jurisdiction in California would be ripe for challenge if following the development of trial it should appear that ANI acted reasonably and in good faith to protect its trademark against an infringer." *Id.* at 1089 (Sneed, J., concurring).

Tortious conduct, however, is only one element to be considered as satisfaction of

the *Calder* "express aiming" requirement. This Circuit's jurisprudence precludes basing the exercise of personal jurisdiction upon only the defendant's act of sending a cease-and-desist letter; indeed, either the letter itself must evince some sort of "targeting," "express aiming," or "wrongfulness," *see id.*, or the defendant must have some additional contacts with the forum for the exercise of personal jurisdiction to comport with due process. Indeed, although an intentional tortious act clearly satisfies the *Calder* "effects test," *see, e.g., Calder*, 465 U.S. at 789–90, 104 S.Ct. 1482; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 2004 WL 1462444 at *9 (9th Cir. June 29, 2004) (holding that, in the tort context, "[t]he 'express aiming' analysis depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue"), so too can other conduct "targeted" or "expressly aimed" at residents of the forum state. *Compare Cascade Corp. v. Hiab–Foco AB*, 619 F.2d 36 (9th Cir.1980), *with Inamed Corp. v. Kuzmak*, 249 F.3d 1356 (Fed.Cir.2001).

In *Cascade Corp.*, the Oregon-based plaintiff manufactured hydraulic equipment and material handling equipment. *Cascade Corp.*, 619 F.2d at 36. The defendant was a Swedish corporation which manufactured cranes and other equipment in Sweden. *Id.* The defendant maintained no offices or personnel in Oregon or in the United States, owned no property in Oregon, and marketed its products in the United States through a wholly-owned subsidiary, which was incorporated in Delaware. *Id.* The defendant advertised its products in national publications, which were available in Oregon, and, on two occasions, the defendant's representatives visited Oregon to explore distributorship possibilities and to evaluate the use of cranes in the lumber industry. *Id.* at 37.

Upon the belief that the plaintiff was infringing the defendant's patent, the defendant sent an infringement letter to the plaintiff in Oregon. *Id.* at 36. The parties exchanged a series of letters, but were unable to resolve their dispute. *Id.* The plaintiff ultimately brought a declaratory judgment action in Oregon district court, seeking clarification of the parties' rights vis-à-vis the disputed patents. *Id.*

The district court concluded that the defendant had not purposely availed itself of Oregon to justify the exercise of specific jurisdiction there. *Id.* On appeal, this court first acknowledged that the Oregon long-arm statute was limited to certain causes of action enumerated in the act, such as the conduct of business in the state; the commission of a tort in the state; the ownership, use or possession of real estate in the state; among others. *Id.* The court then explained that when a "defendant's activities are not so pervasive as to subject him to general jurisdiction, the issue whether jurisdiction will lie turns on an evaluation of the nature and quality of the defendant's contacts in relation to the cause of action." *Id.* at 37 (citing *Varsic v. U.S. Dist. Ct. For Cent. Dist., Etc.*, 607 F.2d 245 (9th Cir.1979) (quoting *Data Disc, Inc. v. Systems Technology Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir.1977))).

In affirming the district court, this court rejected the plaintiff's assertion that cease-and-desist letters with few additional contacts could justify the exercise of jurisdiction. *Id.* at 38. Indeed, we concluded that allowing specific jurisdiction over parties, whose contacts with the forum consisted only of sending cease-and-desist letters into the forum, advertising in magazines available in the forum, and selling its products nationwide through independent distributors, would offend "traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co.*, 326 U.S. at 316, 66 S.Ct. 154).

In comparison, the Federal Circuit recently held that a defendant's good-faith infringement letter coupled with his other contacts in the forum justified the exercise of personal jurisdiction. *Inamed Corp.*, 249 F.3d at 1360. *Inamed* was a patent-infringement case occurring in California. *Id.* at 1358. There, the New Jersey-resident doctor-defendant, Kuzmak, entered into a series of license agreements with a California-domiciled manufacturing company, Inamed; the agreements granted Inamed an exclusive license to practice all four of Kuzmak's patents related to obesity treatment in exchange for royalty fees based on Inamed's commercial exploitation of the patents. *Id.* at 1359. Except for one "get acquainted" meeting that took place in California, Kuzmak negotiated and consummated these contracts with Inamed entirely by phone and mail from New Jersey. *Id.* The contracts remained in effect for approximately six years, during which time Inamed paid royalties to Kuzmak of more than $1.3 million. *Id.* Ultimately, the contracts fell apart, and Kuzmak sent a letter to Inamed protesting Inamed's willful infringement of his patents. *Id.* Several months after receiving the letter, Inamed commenced a declaratory judgment action against Kuzmak in California, seeking, *inter alia*, the invalidation and unenforceability of the patents. *Id.*

In analyzing the propriety of the exercise of specific jurisdiction over Kuzmak in California, the court began with the infringement letter, which it called, "the first and most important contact." *Id.* at 1360. Although the court determined that the letter was "directed at" California-resident Inamed, it concluded that a good-faith infringement letter alone was insufficient to establish purposeful availment. *Id.* at 1361 (collecting Federal Circuit cases).

However, the court went on to consider "other activities" in the state to determine whether Kuzmak had made such minimum

contacts with California to justify the exercise of jurisdiction. The court noted that the 1989 meet-and-greet session in California as well as Kuzmak's telephone and mail contacts with California surrounding the making of the licensing agreements should be considered when deciding whether a defendant purposely availed himself of the forum. *Id.* (citing a defendant purposely availed himself of the forum. *Id.* (citing *Quill Corp. v. North Dakota*, 504 U.S. 298, 308, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992) ("So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.") (emphasis omitted))).

Accordingly, the court concluded that the combination of the infringement letter and Kuzmak's negotiations and license agreements satisfied the first prong of the minimum contacts analysis. *Id.*

In the present case, the district court found that LICRA and UEJF had purposely availed themselves of the benefits of California so that the effects of their actions would be felt there. The district court cited the cease-and-desist letter LICRA sent to Yahoo!, use of the United States Marshals Service to serve process, and LICRA and UEJF's request to the French court for Yahoo! to perform certain acts on its server and to remove certain Nazi items from its website in California to support its conclusion that Appellants met the purposeful availment requirement. Focusing its conclusion on "express aiming" rather than tortious conduct, the district court determined that LICRA and UEJF's contacts with California satisfied the *Calder* "effects test." The court stated that LICRA and UEJF were on notice that they could be haled into court in California because they specifically target-

ed Yahoo! at its California headquarters. I agree.

LICRA and UEJF's conduct toward California is sufficient to establish their purposeful availment of the forum. Before bringing suit against Yahoo!, LICRA sent Yahoo! a letter stating, in part,

> [W]e are particularly choked [sic] to see that your Company keeps on presenting every day hundreds of nazi symbols or objects for sale on the Web. # AD 9EBD# This practise is illegal according to french legislation and it is incumbent upon you to stop it., at least on French Territory. [¶] Unless you cease presenting nazi objects for sale within 8 days, we shall size[sic] the competent jurisdiction to force your Company to abide by the law.

Although our case law maintains that a cease-and-desist letter *alone* is not enough to assert specific jurisdiction, such a letter in combination with Appellants' other conduct supports the conclusion that LICRA and UEJF expressly aimed their conduct at California-resident Yahoo!. Several days after sending the letter, LICRA filed suit against Yahoo! in France seeking to compel Yahoo! to prevent users of its U.S.-based auction site from posting Nazi-related material or to re-engineer its U.S. servers so that such items would be blocked to French users. Soon thereafter, UEJF filed a similar lawsuit in France, which, in addition to the relief sought by LICRA, sought to compel Yahoo! to "cease all hosting" of user-posted writings on Nazism or other Nazi-related materiels or to block all access to these items to French users. Under the Hague Convention procedures, in order to instigate their lawful suit in France, LICRA and UEJF were required to utilize the Marshals Service to serve process in the United States. However, the simple fact that they followed the required procedure does not insulate LICRA and UEJF from jurisdiction; rather, it supports the conclusion that they could reasonably anticipate being haled into California's court for so doing. Indeed, as in *Calder*, LICRA and UEJF knew that their lawsuits' demands would have a powerful and potentially devastating impact on Yahoo! and that the brunt of that effect would be felt in California. *See Calder*, 465 U.S. at 790, 104 S.Ct. 1482.

Moreover, after the French court decided the two lawsuits in LICRA and UEJF's favor, LICRA and UEJF moved the French court to order Yahoo! to perform certain acts on Yahoo!'s California server to comply with the French court judgment. The French order, again served by the United States Marshals Service on Yahoo! in California, demanded that Yahoo! remove from its California server any Nazi relics, objects, insignia, emblems and flags on its auction site, excerpts from *Mein Kampf* and *Protocole des Sages de Sion*, and its browser directories' headings "negationists" and any equivalent category under the heading "Holocaust." Although LICRA and UEJF note that they must take additional steps to enforce and collect the accrued penalties and fines against Yahoo!, I nonetheless would hold that LICRA and UEJF purposely availed themselves of the benefits of California through their successful requests to the French court for an order requiring Yahoo! to conform its California conduct to French law or suffer extensive monetary consequences. I do not dispute that LICRA and UEJF pursued their legal rights in France, but the resulting order from the French court and its service on Yahoo! in California constitute conduct expressly aimed at California. *Cf. Calder*, 465 U.S. at 789–90, 104 S.Ct. 1482; *Cascade Corp.*, 619 F.2d at 38; *Inamed Corp.*, 249 F.3d at 1361.[7]

Indeed, LICRA and UEJF expressly aimed the cease-and-desist letter, the ser-

vice of process, and the service of the French order at Yahoo! in California intending to accomplish a particular result in California; they deliberately sought action from Yahoo!—removal of all Nazi-related material or, alternatively, a complete re-engineering of Yahoo!'s U.S. servers to prevent French users from being able to see such material—knowing that their request would likely create extensive technical and logistical problems for Yahoo! in California. Regardless of whether such acts may be considered wrongful or not, I believe they nonetheless satisfy *Calder'* s "express aiming" criteria for a finding of purposeful availment.

In sum, I would hold that LICRA and UEJF's actions toward California-based Yahoo! constitute such purposeful availment of California to justify the exercise of personal jurisdiction over them there. LICRA and UEJF's contacts cannot be deemed "a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person," *see Burger King*, 471 U.S. at 475, 105 S.Ct. 2174; rather, these acts were deliberately and expressly aimed at Yahoo! in California for the very purpose of having their effects felt there. Therefore, I conclude that LICRA and UEJF's contacts with Yahoo! in California are sufficient to establish that LICRA and UEJF purposely availed themselves of the forum as to warrant the district court's exercise of specific jurisdiction.

### 2.

Given my conclusion that LICRA and UEJF sufficiently directed their activities toward Yahoo! in California, I next assess whether the claim arises out of or relates to the defendant's forum-related activities. This court relies on a "but for" test to determine whether a particular claim arises out of or is related to forum-related activities and thereby satisfies the second requirement for specific jurisdiction. *Bal-*

*lard v. Savage*, 65 F.3d 1495, 1500 (9th Cir.1995) (citing *Shute v. Carnival Cruise Lines*, 897 F.2d 377 (9th Cir.1990), *rev'd on other grounds*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991)). Again, in *Inamed*, the court determined that the infringement letter itself satisfied the relatedness factor. Noting that "[t]he central purpose of a declaratory action is often to 'clear the air of infringement charges,' " the court concluded that Inamed's claim for declaratory judgment arose directly out of Dr. Kuzmak's act of sending an infringement letter. *Inamed*, 249 F.3d at 1362 (citation omitted). Indeed, Kuzmak's letter clearly asserted that Inamed "willfully infringed" at least two of Dr. Kuzmak's patents and alleged infringement of another. *Id.* at 1361–62. This language, the court noted, indicated that Kuzmak was aware—and perhaps intentionally communicating his awareness—of the treble damages and attorney fees to which he may be entitled in a successful infringement action against Inamed. *Id.* Inamed's action to preempt such suit therefore arose directly out of such letter. *Id.* at 1362.

The same holds true here. LICRA and UEJF deliberately attacked the validity and legality of Yahoo!'s website in the French court. As noted above, they sent the cease-and-desist letter, brought suit in France and prevailed, and moved the court to order Yahoo!'s compliance in California. All of these acts led to Yahoo!'s declaratory judgment action seeking clarity as to the constitutional implications of LICRA and UEJF's demands. The within suit stems directly from Appellants' actions vis-à-vis Yahoo!. Thus, Yahoo!'s attempt for judicial clarity in the United States courts can be said to at least "relate to" if not "arise out of" LICRA and UEJF's actions. *See Inamed*, 249 F.3d at 1362 (noting that "Inamed's misuse cause of action at least 'relates to' if not outright 'arises out of' Dr.

Kuzmak's prior negotiation efforts leading to the parties' license agreements").

### 3.

The final requirement needed to establish specific jurisdiction is reasonableness. To be reasonable, the exercise of jurisdiction "must 'comport with fair play and substantial justice.' " *Panavision,* 141 F.3d at 1322 (quoting *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (citing *Core–Vent Corp. v. Nobel Industries AB,* 11 F.3d 1482, 1487 (9th Cir.1993) (citing *Burger King,* 471 U.S. at 476–77, 105 S.Ct. 2174)).

This Circuit has determined that the court must balance seven factors to determine reasonableness: (1) the extent of the defendant's purposeful availment; (2) the burden on the defendant to litigate in the forum; (3) the extent of conflict with the defendant's sovereign state; (4) the forum's interest in hearing the dispute; (5) the most efficient resolution of the controversy; (6) importance to the plaintiff for convenient forum and effective relief; and (7) the existence of an alternative forum. *Id.* at 1323.

Under the first factor, the extent of the defendant's purposeful availment, or the "degree of interjection," must be considered under the reasonableness standard. *Id.* "Even if there is sufficient 'interjection' into the state to satisfy the purposeful availment prong, the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the reasonableness prong." *Id.* (citing *Core–Vent Corp.,* 11 F.3d at 1488). Here, the degree of interjection was not minimal.

LICRA and UEJF's acts were aimed at Yahoo! in California; indeed, they sent a letter threatening suit in France, brought such suit by serving Yahoo! with process in California, and most importantly, upon obtaining a favorable judgment in France, asked the French court to order Yahoo! to comply with such judgment by stripping Yahoo!'s website of any offending material or re-engineering its servers to block French users from seeing such material. Moreover, Appellants' assertion that they have not attempted to enforce the French law order in the United States is unavailing. The May 22, 2001, order served on Yahoo! indeed demanded that Yahoo! immediately comply with French law by removing Nazi materials or rendering them inaccessible to French users or face significant daily fines; it is unimportant that LICRA and UEJF have as yet refrained from taking the additional steps necessary to collect the extensive and accruing fines against Yahoo!. Because I believe that LICRA and UEJF expressly aimed their actions at Yahoo! in California seeking to cause a particular effect, I conclude that this factor weighs in Yahoo!'s favor.

Second, while the defendant's burden in litigating in the forum is considered, it will not be deemed unreasonable unless it constitutes a deprivation of due process. *Id.* Although LICRA and UEJF assert that they will endure continued hardships if forced to litigate this action in California, they have failed to allege facts that rise to a deprivation of due process; indeed, they readily complied with the Hague Convention's procedures for service of process in California in order to further the ends of their French lawsuit; thus, it would not be unreasonable for them to return to answer for the constitutional implications their lawsuits may have in the United States. This factor too favors Yahoo!.

Third, the court must weigh the extent of interference with the alternate forum (here, France). *See id.* "[T]he foreign-

acts-with-forum-effects jurisdictional principle must be applied with caution, particularly in an international context." *Core–Vent Corp.*, 11 F.3d at 1489 (citing *Pacific Atlantic Trading Co., Inc. v. M/V Main Exp.*, 758 F.2d 1325, 1330 (9th Cir.1985)). "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Id.* (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 115, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (citation omitted)). "[L]itigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist." *Sinatra*, 854 F.2d at 1199.

In the interest of comity, this factor may tip in favor of Appellants; however, United States courts are in a unique position to interpret their own constitution and render determinations regarding their citizens' rights thereunder. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 247–48, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) (Brennan, Marshall, Blackmun, and Stevens, JJ., dissenting) ("[T]he interpretation of the text of the Constitution in light of changed circumstances and unforeseen events—and with full regard for the purposes underlying the text—has always been the unique role of this Court."). Thus, this factor neither weighs in favor of nor against Appellants.

Fourth, as LICRA and UEJF have purposely availed themselves of California, the state's interest in resolving the dispute is considerable. Yahoo! is based in California and the constitutionality of the French court judgment will have significant effects on Yahoo!'s ability to conduct business in the state. Thus, this factor favors Yahoo!.

Fifth, the efficient-resolution factor considers the availability of evidence and witnesses, *see Panavision*, 141 F.3d at 1323, and the forum which is more familiar with the facts and history of the case, *Ballard v. Savage*, 65 F.3d 1495, 1501–02 (9th Cir. 1995). Although LICRA and UEJF's suit was litigated in France and involves French law, Yahoo!'s declaratory judgment action seeks to clarify the constitutionality of the French court order under United States law; thus, as noted above, the United States courts seem to be in a better position to make such determination.

The sixth factor favors Yahoo!, as it certainly would be more effective and convenient for Yahoo! to conclude the French suit in its own state, rather than wait for LICRA and UEJF to take the final steps to enforce the penalties and fines assessed against Yahoo!. Moreover, given that First Amendment concerns are implicated, this factor again favors Yahoo! because a United States venue is uniquely qualified to interpret its own constitutional law.

Finally, Yahoo! bears the burden to demonstrate the unavailability of an alternative forum. *Panavision*, 141 F.3d at 1324. LICRA and UEJF assert that the French court was the proper avenue to question the validity of the French court judgment; indeed, Yahoo! opted not to appeal the French court order and rather to bring suit in the United States. Moreover, because additional steps must be taken in the French court before LICRA and UEJF can collect the penalties under the judgment, the French court may be a more favorable forum. Again, however, the United States courts are better situated to analyze the validity of the French court judgment under United States law. This factor neither favors Yahoo! nor Appellants.

In balancing these factors, I conclude that, although some factors weigh in Appellants' favor, they failed to present a compelling case that the district court's exercise of jurisdiction in California was unreasonable. I therefore would hold that

all of the requirements for the exercise of specific, personal jurisdiction are satisfied, and therefore the district court properly exercised personal jurisdiction over LICRA and UEJF. Given this conclusion, I now turn to the question of whether the district court abused its discretion in refusing to abstain from this controversy.

### C.

Although federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred on them by Congress, in exceptional cases, a federal court should stay a suit and await the outcome of parallel proceedings as a matter of "wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation." *Finova Capital Corp. v. Ryan Helicopters*, 180 F.3d 896, 898 (7th Cir.1999) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (internal quotation and citation omitted)); *see also Supermicro Computer, Inc. v. Digitechnic, S.A.*, 145 F.Supp.2d 1147, 1149 (N.D.Cal. 2001) (citing Schwarzer et al., *Federal Civil Procedure Before Trial*, ¶ 2:1326.4 (2000) (noting that international abstention is rooted in concerns of international comity, judicial efficiency, and fairness to litigants)). Typically, the doctrine allows a court to abstain from hearing an action if there is a first-filed foreign proceeding elsewhere. *Supermicro Computer, Inc.*, 145 F.Supp.2d at 1149.

The court's first task is to determine whether the federal and foreign proceedings are in fact parallel. *Finova Capital Corp.*, 180 F.3d at 898. Here, the district court determined that the proceedings between LICRA and UEJF and Yahoo! in France turned on the question of whether Yahoo!'s postings violated French law; whereas, "the purpose of the present action is to determine whether a United States court may enforce the French order without running afoul of the First Amendment." Indeed, the court noted, "Nothing in Yahoo!'s suit for declaratory relief in this Court appears to be an attempt to relitigate or disturb the French court's application of French law or its orders with respect to Yahoo!'s conduct in France." Accordingly, the district court refused to abstain.

The district court acted within its discretion in refusing to abstain. The proceedings in France had concluded, Yahoo!'s ability to appeal had expired, and the French court order specifically instructed Yahoo! to remove or render inaccessible the offending postings or else be subject to ongoing fines. These fines continue to mount, and Yahoo! brought the within suit to challenge the constitutionality of such judgment's enforcement. The district court correctly concluded that the actions involve distinct legal issues and that no basis for abstention had been established.

### CONCLUSION

For the foregoing reasons, I would hold that Yahoo!'s action for declaratory relief was ripe for adjudication and that the district court properly exercised jurisdiction over LICRA and UEJF and acted within its discretion in refusing to abstain. I would therefore affirm the district court's decision.